MERCHANTS' MUTUAL INSURANCE COMPANY v. N. V.
LACROIX.

1. A condition in a fire insurance policy that "all claims under this policy
   are barred, unless prosecuted within one year from the date of the
   loss," is a lawful and valid stipulation. It is not in contravention of
   public policy, nor is it incompatible with or merged in the limitation
   laws of the State. (By a majority of the court—Presiding Judge
   Evans reserving an opinion on this question.)

2. A fire insurance policy stipulated that claims under it must be "prose-
   cuted" within a limited time after the loss. *Held*, that the presenta-
   tion of the loss, and a demand of its payment, are not such a *prosecu-
   tion* of the claim as is meant by the policy. The policy means a
   prosecution by a suit or action.

3. A limitation created by contract, and requiring suit to be brought
   within a given time, is not affected by the forty-third section of the
   twelfth article of the present State Constitution, which declares that
   the statutes of limitation were suspended from January 28, 1861,
   until the approval of the Constitution by Congress, on March 30, 1870;
   nor have the rulings in the case of Bender v. Crawford, 33 Texas,
   745, any relevancy to such a limitation by contract.

4. Presiding Judge Evans dissents from the disposition made of this
   cause by the majority of the court, and holds that there was such
   evidence of a waiver by the insurance company of the plaintiff's
   delay in bringing his suit, and also such evidence that the delay was
   in great part attributable to the company itself, as would justify an
   affirmance of the judgment rendered against the company by the
   court below.

APPEAL from Galveston. Tried below before the
Hon. George R. Scott.

The facts of the case, so far as they are material, are
stated or indicated in the opinions.

This cause was first decided by this court in March,
1871, when the opinion of the majority of the court was
delivered by Mr. Justice Walker, and a dissenting
opinion by Presiding Judge Evans. A rehearing, how-
ever, was granted on motion of the appellee, and the

case was continued until the term of 1871–2, when the judgment was reversed and the cause remanded.

*Ballinger, Jack & Mott*, for the appellant.—There is in some policies, at least in fire policies, a clause requiring that the action shall be brought within six months (or some other definite period) after the occurrence of the loss, and this clause has been held to be valid. (2 Parsons on Maratime Law, 481, and authorities there cited.)

Policy provided that no suit or action in law or chancery shall be sustained, unless commenced within twelve months. Held, that the stipulation went to the right as well as the remedy ; and the liability of the company did not become absolute unless the remedy was sought within the time limited, and that a plea of the same was a conclusive answer to the suit. (Cray v. Hartford Fire Ins. Co., 1 Blatchford, C. C., U. S., 280.)

Upon this question, the Supreme Court of the United States say : "The questions presented in this case, though new to this court, are not new to the country. The validity of the limitation stipulated in conditions similar to the one in the case at bar, has been elaborately considered in the highest courts of the several States, and has been sustained in all of them, except in the Supreme Court of Indiana, which followed an adverse decision of Mr. Justice McLean in the Circuit Court for the District of that State. Its validity has also been sustained by Mr. Justice Nelson in the Circuit Court for the District of Connecticut. (See case last above cited.)

"*We have no doubt of its validity.* The commencement, therefore, of the present action within the period designated, was a condition essential to the plaintiff's recovery." (Riddlesbarger v. Hartford Insurance Company, 7 Wallace, 386, 391–2.)

In this case the opinion of the court was delivered by Associate Justice Field, and the following cases were cited as supporting the validity of the limitation clause in policies of insurance: Peoria Ins. Co. v. Whitehill, 25 Illinois, 466; Williams v. Mutual Ins. Co., 20 Vermont, 222; Wilson v. Ætna Ins. Co., 27 Vermont, 99; N. W. Ins. Co. v. Phœnix Oil Co., 31 Penn. State, 449; Brown and wife v. Savannah Ins. Co., 24 Georgia, 101; Portage Ins. Co. v. West, 6 Ohio State, 602; Amesbury v. Bowditch Ins. Co., 6 Gray (Mass.), 603; Fullam v. New York Ins. Co., 7 Gray, 61; Carter v. Humboldt, 12 Iowa, 287; Stout v. City Ins. Co., 12 Iowa, 371; Ripley v. Ætna Ins. Co., 29 Barbour, 552; Gooden v. Amoskeag Co., 20 New Hampshire, 73; Brown v. Roger Williams Co., 5 Rhode Island, 394, and 7 Rhode Island, 301; Ames v. New York Ins. Co., 4 Kernan (N. Y.), 253.

A condition in a policy limiting the time within which a suit may be brought for the recovery of any claim upon it, to one year from the happening of the loss, is valid and binding. (Ripley v. Ætna Insurance Company, 30 N. Y. (Court of Appeals), 136.)

A condition limiting the period to six months after the happening of the loss, within which suit might be brought upon the policy, is valid, and will bar an action not commenced within that time. (Roach v. New York and Erie Insurance Company, 30 N. Y., 546.)

A condition in a policy that no suit shall be brought in case of loss, unless within six months after the loss, is valid and binding on the insured. (Woodbury Savings Bank v. Charter Oak Insurance Company, 31 Conn., 518.)

A condition in a policy that no recovery shall be had unless suit is brought within a certain time, is valid. (Patrick v. Farmers' Insurance Company, 43 N. H., 621.)

A condition in a policy, requiring suit for any loss or damage under the policy to be brought within a stipulated time, is a valid condition. (Carter v. Humboldt Fire Insurance Company, 12 Iowa, 287.)

In the case of Portage County Mutual Fire Insurance Company v. West & West, reported in 6 Ohio State Reports, page 602, the Supreme Court of Ohio, say : "But it is said that this is a disabling statute, and in violation of the general law of limitation of actions, and should receive a restricted construction, and not such an one as will exclude the party injured from the right of suing within the term fixed by the general act. To this it is only necessary to reply, that the clause of the seventh section in question is founded upon public policy, and not, like the ordinary statutes of limitation, upon presumption of payment, and affects not the remedy merely, but the right of the party to sue. The case is analogous to those contracts in which there is a positive stipulation to do some act, provided specific demand be made within a specified time, or provided some other precedent condition to be performed.

    \*      \*      \*      \*      \*      \*      \*

"Such being the construction which we feel constrained to give the seventh section, it follows that the district court was at fault in its instructions to the jury ; and that the plaintiff's liability to a suit, by what we have seen, should be treated as the terms of the contract which the insured accepted for their protection against the loss, was limited to a period of time clearly specified, and that it could not, after that limitation expired, be held answerable to the defendants on their policy of insurance." (Page 604.)

*McLemore & Hume*, for the appellee, after disposing of other points, proceeded as follows : But, as before

intimated, our construction of the seventeenth condition of the policy renders our case impervious to the lengthy argument of appellant's counsel in support of the efficacy of limitation clauses in insurance contracts. We deny that the condition referred to required of the assured to institute a suit, or action at law, or in equity, within a year of the loss, or be barred; and say, on the contrary, that the clause is not in fact a limitation clause, as assumed by counsel, like in character to those clauses adjudicated upon by the courts in the cases referred to by them in brief and argument. The provisions for limitation in all the cases cited, without, we believe, an exception, expressly refer to actions, or suits at law, or in equity, and of course can only mean the regular proceedings by declaration, bill or petition, employed by assured persons to secure their rights against the insurer. But no such language is used in the seventeenth clause under discussion in the case at bar. It reads thus: "All claims under this policy are barred, unless prosecuted within one year from the date of loss. No claim for loss to bear interest before judicial demand." It nowhere provides for the institution of a suit or action, but omits any such language—only requiring the claim to be prosecuted (without prescribing the manner of prosecution) within the year. Now, what is meant by "claim?" What by "prosecuted?" Webster defines a claim to be: "A demand of a right, or supposed right; a calling on another for something due, or supposed to be due, as a claim of wages for services. A claim implies a right, or supposed right, in the claimant to something which is in another's possession or power. A claim may be made in words, by suit, or by other means." * * *

The meaning of the last word, "prosecuted," in the connection here employed, is made more perspicuous

by the definition of the noun "prosecution." The same lexicographer says, that "prosecution" means, first, "the act or process of endeavoring to gain or accomplish something; pursuit by efforts of body or mind, as the *prosecution* of a scheme, plan, design, or undertaking; the *prosecution* of war, or of commerce; the *prosecution* of a work, study, argument, or inquiry. Second, the institution and carrying on of a suit in a court of law or equity, to obtain some right, or to redress and punish some wrong.     *     *     *     Third, the institution, or commencement and continuance of a criminal suit."

The entire definitions are not inserted, because of their length and superfluousness for the present purpose; but the substance of the various meanings of the two words is fully stated in the above extracts.   In its technical sense, "prosecution" relates only to proceedings of a criminal nature, before a court of criminal jurisdiction.   Bouvier (2 Vol. Law Dic., 396) defines it thus: "Prosecution.   Criminal Law.   The means adopted to bring a supposed offender to justice and punishment by due course of law.   2. Prosecutions are carried on in the name of the government, and have for their principal object the security and happiness of the people in general.   3. The modes most usually employed to carry them on are by indictment; presentment of a grand jury; coroner's inquest; and by an information." The author sustains each division of the definition by citation of authorities.   It is evident that counsel cannot contend for the technical meaning of the term "prosecuted," for that sense of the word would be fatal to their own view of the case.   They are therefore forced to rely on some one of the general definitions of the term.   This being true, will a court of conscience permit them to adopt, in the last necessity, the one par-

ticular general definition which will operate a forfeiture of the rights of the second party to the contract, and leave out of consideration altogether the remaining primary and general definitions, the use of either of which would protect the rights otherwise forfeited? Surely not! We say, that by the seventeenth condition all that appellant required of appellee in case of loss, and all that appellee contracted to do in that event, was to make up his proofs, present his policy for payment, and put himself generally in communication with appellant respecting the loss of the subject insured, within such reasonable time as would enable appellant to examine satisfactorily all the circumstances of the disaster, while the history thereof should be yet clear and fresh upon the minds of witnesses. The clause simply undertakes to define the limit of such reasonable time, when it prescribes that the claim shall be prosecuted within one year succeeding the loss. We feel secure in inviting the scrutiny of the court to the theory now urged. Let any man, learned or unlearned, read over this assumed limitation clause, and answer, whether its phraseology would ever suggest to his mind the idea of a suit in court! Would it not, on the contrary, occur to him that the assured was required by its terms to "prosecute" his "claim" against the company simply and only as he would prosecute any other business with any other party; that is, by negotiating and arranging for its progress and consummation. Men are familiarly said to prosecute any and all business enterprises and concerns, general or special. Such is the popular, the universal employment of that term.

Only a part of the seventeenth condition has been thus far subjected to review. Unhappily for appellant it contains other words. Its last sentence reads thus: "No claim for loss to bear interest before judicial de-

mand." Judicial demand ! At last we have language of unambiguous import. The appellant declares that interest shall only accrue upon "judicial demand." Then there must be some kind of demand recognized by it that is not judicial. Judicial demands are such as are made by suitors in courts of law or equity. There is no need of controversy here. The company's meaning is clear. The mere statement that a demand is judicial, implies necessarily that it has been commenced and will be carried on by the usual machinery of courts. But how are those demands to be made which are not "judicial"—embracing, as they do, the large majority of claims against the company—those claims it is most willing to pay, because they can be discharged without interest? Why, they are to be prosecuted by a presentation of all the required proofs to the company within a year of the loss, and a compliance on the part of the assured with all obligations assumed by him under the contract of insurance.

To say the most for the construction contended for by appellant, it must be conceded, in any aspect of the subject, that the clause under criticism is couched in language too ambiguous to be insisted on as the declaration of a forfeiture (at all times odious to the law) of a right under a contract which the appellee had usage, syntax, and authority for interpreting in a sense different from that now for the first time applied by the appellant. It must occur to the court as extremely strange that the company has chosen to use these words, when others, eminently fit to express its alleged meaning, were at its disposal ; and, in fact, running through every policy adjudicated upon in the cases it here cites to sustain its unique construction. It would seem that a large body of capitalists, seeking to associate themselves under a charter for the conduct of the most im-

portant and complicated of all business enterprises, would submit their scheme of organization to counsel; have it probed and measured in all its parts by the eye of professional criticism; every word weighed; every provision analyzed; every sentence reduced to the form of exact perfection.

Every well meaning company would certainly take such precautions as would shield it from the disagreeable incidents of litigation, and the odium of eternal contention with those from whom it expected to derive its business patronage. We cannot presume that appellant was less wise than others engaged in a like vocation; or, that it unwittingly neglected those safeguards which others have so universally employed. If there is anything unusual in the form of contract adopted by it, we cannot attribute the fact to either a want of judgment or information. It had no occasion to depart from the beaten track of custom, unless some design was involved in its eccentric course. So long as its alluring promises can recommend it to the public favor, and secure continued tributes to its coffers, it speaks to all men in the language of unusual generosity, and says: "Should your property be burned while covered by our policies, we will not, like other companies, require you to reach us by the expensive process of the courts within one year succeeding your losses, or forfeit your rights under our contracts; but we will simply require you to prosecute your claims against us by their due presentation and proof, and by supplying us with a history of the circumstances upon which your rights depend. Our only purpose is to have our patrons make out and present their claims against us while the facts attending their losses are recent and accessible to our investigation." But when the confiding victim loses the house above his head by

17—XXXV

the very peril against which he has spent his earnings to protect himself—when his little store goes up to Heaven with the black smoke—when he stands friendless and helpless before the men who have promised him relief in time of misfortune, and is persuaded by their actions and professions that they will protect him when their formal duties of investigation have been performed—when, after months of daily expectation and deferred hope, his poverty urges a last earnest demand for that which is his due, then, and not till then, the company, through its accredited official, replies, "You can have no relief now; you should have sued in time!" And yet this same company is so drunk with stolen wines, that it actually reels into the presence of this court on the arms of respectable counsel, and asks it to approve the frauds by which its wealth is acquired!

In the case of Hoffman v. Ætna Insurance Company (32 N. Y. R., 405), the following propositions are announced : 1. In the construction of contracts words are not to be taken in their broadest import when they are equally appropriate in a sense limited to the object the parties had in view, and their apparent intent as deduced from the whole instrument. 2. Where the language of a promisor may be understood in more senses than one, it is to be interpreted in the sense in which he had reason to suppose it was understood by the promisee. 3. If it be uncertain, in view of the general tenor, and the apparent object of the parties, whether given words were used in an enlarged or a restricted sense, other things being equal, that construction should be adopted which is most beneficial to the promisee. 4. Conditions and provisions in policies of insurance are to be construed strictly against the underwriters, as they tend to narrow the range and limit the force of the particular obligation. 5. Every intend-

ment is to be made against the construction of a contract under which it would operate as a snare. We regard these principles as conclusive of the branch of the case now under discussion. (See Palmer v. Warren Ins. Co., 1 Story's R., 364-5-6; 1 Sumner, 434; 32 Penn., 351.)

WALKER, J.—This is an action on a policy of insurance, which contained the following clause, "That all claims under this policy are barred unless prosecuted within one year from date of loss."

The petition was filed on the third of November, 1868, and it avers that the loss occurred on the eleventh of August, 1867.

The appellant, who was defendant in the district court, demurred to the petition on the eleventh of December, 1868. On the fifth of January, 1869, it filed an amended answer, setting up a special limitation of the action under the seventeenth clause of the policy sued on. On the trial the parties waived a jury, and proceeded to trial by the court. The judge overruled the demurrer, disregarded the plea of limitation, and gave the appellee a judgment for $2178, from which judgment an appeal is brought to this court.

It is assigned for error that the plea of limitation was overruled, and although other errors are assigned, we deem it unnecessary to the decision of the case to discuss them. In Riddlesbarger v. Hartford Insurance Company, 7 Wallace, 386, this question is decided on error to the Circuit Court of Missouri. The suit was on a $5000 policy, taken by the defendant on a brick building in Kansas City, in the State of Missouri. The building was destroyed by fire in the month of March, 1862. In the month of June following, the plaintiff brought his action on the policy in the Common Pleas

Court of Kansas City. The defendant plead to the merits, and the cause was continued from term to term, until June, 1864, when the plaintiff dismissed his action without prejudice, and within one year brought his action for a second time in the Court of Common Pleas for the county of St. Louis. From this court the cause was transferred to the Circuit Court of the United States for the District of Missouri. The policy contained the following clause:

"That no suit or action of any kind against said company for the recovery of any claim upon, under, or by virtue of the said policy, shall be sustainable in any court of law or chancery, unless such suit or action shall be commenced within the term of twelve months next after the loss or damage shall occur; and in case any suit or action shall be commenced against said company after the expiration of twelve months next after such loss or damage shall have occurred, the lapse of time shall be taken and deemed as conclusive evidence against the validity of such claim thereby so attempted to be enforced."

The plaintiff here contended that he had kept his action alive by commencing suit in the Kansas City Court.

The statute of limitations of Missouri provides that if the plaintiff is non-suited in any action brought before the right is barred, he may commence his action over again within one year from the date of non-suit. The defendant demurred to the petition, the Circuit Court sustained the demurrer, and the case was taken on error to the Supreme Court of the United States, where, it appears from the opinion delivered by Mr. Justice Field, that the court considered and decided two important questions which are also raised in the case at bar.

1. Whether a contract for special limitation between insurer and insured must be regarded as a valid contract.

2. Whether, if valid, the condition was complied with under the limitation laws of Missouri.

The learned judge, considering the second question presented, remarks: "The objection to the condition is founded upon the notion that the limitation it prescribes contravenes the policy of the statute of limitations. This notion arises from a misconception of the nature and object of statutes of this character. They do not confer any right of action. They are enacted to restrict the period within which the right, otherwise unlimited, might be asserted. They are founded upon the general experience of mankind, that claims which are valid are not usually allowed to remain neglected. The lapse of years without any attempt to enforce a demand creates, therefore, a presumption against its original validity, or that it has ceased to subsist. This presumption is made by these statutes a positive bar; and they thus become statutes of repose, protecting parties from prosecution of stale claims, when, by loss of evidence from death of some witnesses, and the imperfect recollection of others, or the destruction of documents, it might be impossible to establish the truth. The policy of these statutes is to encourage promptitude in the prosecution of remedies. They prescribe what is supposed to be a reasonable period for this purpose; but there is nothing in their language or object which inhibits parties from stipulating for a shorter period within which to assert their respective claims."

This reasoning applies well to the present case. Such a contract in a policy of insurance is not against public policy, nor is it merged in the general limitation laws of the State.

---

The plaintiff's right of action is not saved by the forty-third section of the twelfth article of the Constitution of 1869, nor is it in any way affected by the case of Bender v. Crawford, decided by this court at the present term. The authorities cited in appellant's brief are so numerous that we will not refer to them, except to say, that they utterly preclude all doubt upon the question herein raised, notwithstanding the very respectable authority found in 9. Indiana, 443, and 5 McLean, 461.

It is contended by the appellee's counsel that the word "prosecuted," used in the seventeenth clause of the policy sued on, should be understood as meaning something other than *lis mota*, and that the clause in the policy was sufficiently complied with by presentation of the loss, and demand of payment.

It is true the word "prosecution" usually denotes the means adopted to bring offenders to legal punishment ; but that it may be used, and often so is, as synonimous with the words *suit* and *action*, there can be no doubt ; and the similarity of the clause under consideration with like limitations in other policies which have been before the courts for adjudication, leaves no doubt upon our minds that the parties to this policy use the word as equivalent to *suit* or *action*.

We are, therefore, of the opinion that the failure of the appellee to bring his action within one year from the date of loss, is an effectual bar to all actions on his policy.

The judgment of the district court is reversed, and the cause dismissed.

EVANS, P. J.—Being unable to bring my mind to concur in the conclusions of the court, I feel constrained to dissent, at least so far as the decision dismisses the cause.

The provision annexed to the policy of insurance, which the court adjudges an effectual bar to the appellee's right of action, is as follows:

"All claims under this policy are barred, unless prosecuted within one year from the date of loss. No claim for loss to bear interest before judicial demand."

Now, pretermitting any criticism upon the terms in which this provision is expressed, and without attempting to reconcile the seeming conflict of authorities respecting limitation provisions in policies of insurance—which seeming discrepancy may have arisen by failing to keep in view the nature and effect of limitations established by statute, from those agreed upon by contract—we may concede that this provision was understood and intended by the parties to be an effectual bar to all suits not instituted within one year from the date of the loss ; and we may concede further, that such limitation provisions are, upon grounds of public policy, to be upheld and enforced by the courts ; yet, it is a limitation by contract, flexible in its character, subject, like any other contract, to be altered or waived by the parties, at pleasure.  If the appellant, through its officers or agents, contributed to the delay of the prosecution of the claim, by holding out hopes of an amicable adjustment, or otherwise, then, it is suggested, neither law nor equity demands the enforcement of the limitation clause.

In the case of Peoria Marine and Fire Insurance Company v. Hall, 12 Mich., 211, the court say :

"If valid at all, it (the limitation clause) was valid as a contract and not as a statute.  A limitation fixed by statute is arbitrary and peremptory, admitting of no excuse for delay beyond the period fixed, unless the excuse be recognized by the statute itself.  But a limitation by contract (if valid) must, upon the principles

governing contracts, be more flexible in its nature, and liable to be defeated or extended, by any act of the defendant, which has prevented the plaintiff from bringing his action within the prescribed period."

In Grant *et al.* v. The Lexington Life, Fire and Marine Insurance Company, 5 Ind., 26, the court, in deciding upon a plea of limitation made by the company, say :

"But the record shows clearly that the delay is the result to which the insurance company mainly contributed, by holding out hopes of an amicable adjustment. She should, therefore, not be permitted to take advantage of her own wrong. * * * * Insurance policies are to be liberally construed in favor of the assured, and an exception is to be strictly construed against the underwriters."

In the case of Ripley v. The Ætna Insurance Company, 29 Barbour, S. C. Rep., 557, the court say :

"This court, at a general term, have decided that a stipulation requiring the assured to sue, if at all, in twelve months, although binding originally, may be waived by the language or conduct of the parties ; and the jury, on the second trial, having found that in the present instance there was such a waiver, we are now to inquire whether the finding, and the ruling which led to it, were warranted by the law and the testimony. A twelve months statute of limitations, although assented to by the parties, operates as a forfeiture. It is, therefore, to be construed strictly. Slight evidence of a waiver, as in other cases of forfeiture, will be sufficient to defeat its application."

That there was at least *slight evidence* to show a waiver on the part of the appellants, will appear from an inspection of the record.

Charles De Blanc, secretary and agent of the company, in substance states : That the proofs of loss

were regularly presented in due time by appellee, and no objections made to their form. The claim was not paid, *because the company desired to investigate the origin of the fire;* and that payment for the first time was refused after appellee had been tried upon an indictment for arson (of the premises insured) and acquitted.

Mr. Sherwood, attorney, states that he prepared the proofs, etc., for Lecroix, as his counsel, and presented them to the president of the company, who, after examining them, *made no objection* to them, and said the loss would be investigated. Mr. Sherwood called a second time on the same officer, and was told by him the origin of the fire would be inquired into. The president of the company advises Mr. Sherwood to sell at auction the remnant of Lecroix's goods, as the best that can be done under the circumstances.

It nowhere appears that the officers of the company ever intimated a refusal to pay till after appellee's trial and acquittal; but their acts and language amounted to a substantial request of the appellee's counsel not to bring suit till they should have time to investigate into the origin of the fire, and an implied promise that if, upon that investigation, the appellee was found to be blameless, they would pay without suit. It is evident that, in compliance with that request, and relying upon that implied promise, the counsel of appellee delayed to bring suit within the prescribed time. The conduct of the appellant, as disclosed by the evidence, whether it amounts to a waiver, or occasioned the delay, is a question peculiarly within the province of a jury to determine, and there could be no grounds for disturbing their verdict, for whichever party it may have been found. But, in this case, the jury being waived, the judge passed upon the facts *as a jury.*

His finding is as conclusive as that of a jury, and stands upon the same footing.

These acts contributing to the delay, as disclosed by the evidence, are *facts*, which it is the legitimate province of a jury to determine ; and in the event of a jury having been waived, it becomes the judge to pass upon them *as a jury*.

If these acts by the appellant contributed to the delay, as disclosed by the evidence, and should have been so found by a jury, and so, also, by a judge sitting as a jury, this court, by a uniformity of ruling, would not feel authorized to disturb the finding, unless the *evidence was against* such finding, or *none in favor of it.*

But it is clear, that if the testimony produced on the trial did not establish the fact of acts of defendant contributing to the delay, it at least tends strongly to show them to have been such. Hence the finding of either judge or jury should not be disturbed ; and the judgment ought to be affirmed.

It is certainly true, that the court below may have decided this cause exclusively upon his view of the invalidity of such stipulations annexed to policies of insurance, and may not have considered the question of waiver. If so, there is the most cogent reason why this court, in its judgment of reversal, do not dismiss the cause, but should remand the same, to be tried upon its merits by a jury.

WALKER, J.—The opinion of the court in this case, heretofore rendered, is upon the rehearing reversed, so far as it dismisses the cause ; and it is the opinion of the court that the judgment of the district court be reversed and the cause remanded.

REVERSED AND REMANDED.