Josiah Nesbitt et al., Appellants, *v.* Theodore Digby et al., Appellees.

### APPEAL FROM PIKE.

Where debtors, who are insolvent and pressed for payment, convey all their real and personal estate to a brother of one of them, (after having recently before secured certain creditors by mortgage,) in consideration of five several promissory notes, payable in two, three, four, five, and six years from date, the consideration in the deed for the real estate being only one dollar, with an understanding, that the assignee, at his discretion, shall apply the proceeds of the whole estate towards liquidating the demands against the assignors; such a transaction will be condemned as a legal fraud.

A debtor in failing circumstances is only allowed to place his property beyond the reach of his creditors, by making a general assignment of all his property for the benefit of his creditors, by devoting it fairly to the payment of his debts, and not with a view to his own advantage, by forcing his creditors to release their claims for less than the amount due.

This was a bill in Chancery filed in the Pike Circuit Court, by Nesbitt and Charless, the appellants, for the purpose of reaching certain effects which had been fraudulently assigned by some of the appellees, with a design to defraud and defeat creditors.

The bill states, that in the year 1847 Theodore Digby and Sunderland G. Sears were the owners of a large amount of real estate

and personal property in the county of Pike and State of Illinois, and were carrying on the business of merchandizing under the style of Digby & Sears; that during said year and before that time they became indebted to sundry persons in the cities of New York and St. Louis in a large amount for goods, to the amount $4,000 or $5,000; that this indebtedness was maturing in the fall and winter of 1847; that Joseph Charless and William Nesbitt, two of the creditors of said firm of Digby & Sears, held demands against them to the amount of $500; that judgments were rendered on these demands in the Pike Circuit Court, and executions were issued thereon, which were returned "no property found," prior to the filing of the bill in this cause; that sometime about the month of December, 1847, (prior to the rendition of said judgments,) said Digby & Sears, being indebted at the time to complainants and others, as before alleged, to the amount of $4,000 or $5,000, part of which was due and the balance maturing, and upon a portion of which said firm had already been pressed for payment, resorted to a fraudulent shift to postpone and evade the payment of their debts; that on the 10th day of December, 1847, said Theodore Digby, for the consideration of one dollar, as expressed in the deed, conveyed to his brother, James Digby, a large amount of real estate particularly described in the bill, alleged to be of the value of $4,000; that on the same day Digby & Sears conveyed to said James Digby, for the consideration of one dollar, as expressed in the deed, another portion of real estate (described in the bill); that about the same time said Digby & Sears gave out that they had sold their stock of goods to said James Digby; that shortly after said Theodore Digby executed a chattel-mortgage on all his household property to one Sarah Peabody; that said conveyances left said Digby & Sears without visible or tangible property subject to execution; that the object of these conveyances was to render said Digby & Sears law-proof, and to compel their creditors to settle with them on their own terms, which were fifty cents to the dollar; that portions of said real estate were, at the time of the execution of said deeds, under mortgage to one Richard Hays for the sum of $300; that another portion of said real estate was under mortgage to one James G. Good-

rich for about $1,200. Bill charges that the conveyances to James Digby were fraudulent, and intended to hinder and delay creditors; makes the two Digbys, Sears, Hays, and Goodrich, parties; waives answers under oath; charges that the Goodrich mortgage has been paid, but is kept on foot unsatisfied for fraudulent purposes; prays an account of the sums due upon said mortgages; that the conveyances to James Digby be set aside and the property subjected to the judgments aforesaid.

Answers were filed by James and Theodore Digby. Said answers admit indebtedness of Digby & Sears, as charged in the bill; admit indebtedness to complainant, as charged; return of execution, as alleged, and insolvency of Digby & Sears; admit that conveyances were made to James Digby, as charged; that the nominal consideration was one dollar, but that the real consideration was that the property so conveyed was mortgaged to a large amount, $2,700, which James Digby assumed to pay; that he also executed to said Digby & Sears his five promissory notes for $6,299 in consideration of said conveyances and of the stock of goods; supposed that the real estate was not worth more than the incumbrances upon it; but agreed that if when it was sold it should produce more, the balance should be applied to pay the debts of Digby & Sears, and that he was to hold a lien on the real estate if he overpaid his notes; that he has paid off his notes in liquidating the indebtedness of Digby & Sears, and $400, for which he claims a lien; submits to a sale of the real estate subject to his lien; admits that about the time of the execution of said deeds to James Digby they were pressed for payment of a debt to Bennett & Weld; that Theodore Digby has continued to reside in the house situated on the premises conveyed to James Digby, and to do business for him as a clerk; admits execution of chattel-mortgage to Peabody, and that Digby & Sears were without visible property subject to execution; admits payment of $600 on the Goodrich mortgage; says the balance is unpaid. Answers make an exhibit of the liabilities and resources of the firm of Digby & Sears, showing total liabilities of the firm, $7,298, resources $4,800, besides real estate. The notes of James Digby constitute the larger portion of these resources. An account current is also exhibited be-

33*

tween Digby & Sears and James Digby, showing five notes due from said James Digby to said firm, amounting to $6,295. No. 1, $599, due two years after date; No. 2, $1,000, due three years after date; No. 3, $1,200, due four years after date; No. 4, $1,500, due five years after date; No. 5, $2,000, due six years after date; also credits to James Digby in sundry ways for the amount of the four notes last described.

Amended bill charges that five promissory notes, one, two, three, four, five, and six years' time, were taken as the consideration of the conveyances to James Digby and of the stock of goods; charges that this transaction was colorable, intended to hinder and delay creditors.

Answers of Digby admit that the notes were taken as alleged, but deny fraud.

Replication was filed to these answers. The bill was taken as confessed against Sears. Hays answered, setting up his mortgage. Goodrich answered, admitting payment of $600 on his mortgage, but says the balance is unpaid.

Replication was filed to these answers.

### Evidence.

Goodrich swears that his mortgage was paid in the years 1848, 1849, and 1850, by James Digby, and the mortgage transferred to him.

N. Hart swears that he holds a note on James Digby for $1,200, (with a credit of $200,) dated December 10th, 1847, due four years after date, as collateral security for a debt of $1,050 due him by Digby & Sears.

O. Bennet proves that in the fall or winter of 1847 he held a demand on Digby & Sears, for about $200, in the hands of Grimshaw, for collection; that he afterwards took fifty cents on the dollar for it, paid by Theodore Digby in the spring of 1848; that he was induced to take this under the representations of Theodore Digby as to his circumstances. Said Theodore offered him James Digby's notes, on three or four years' time, for whole amount; said that others would settle with him on these terms.

S. R. Gray proves that James and Theodore Digby are bro-

thers; that James was worth about $800 in real estate at the time of the conveyances to him, two or three horses, and some other personal property.

Angle proves the same.

O. M. Hatch had a conversation with Goodrich some time in the spring of 1849 about his mortgage on Digby & Sears. Goodrich informed him that this mortgage had been satisfied by some arrangement with Digby. This conversation was at the instance of Grimshaw, who held claims against Digby & Sears for collection, and the object of the inquiry was explained to Goodrich.

Cause heard at the March term of the court, 1851, and the bill dismissed, MINSHALL, Judge, presiding.

Complainants appealed. Agreement that either of complainants might assign error. Nesbitt now assigns for error: 1st, That the court erred in dismissing the bill; 2d, That the court erred in not decreeing relief.

J. GRIMSHAW and M. HAY, for appellants.

R. S. BLACKWELL, for appellees.

CATON, J. This looks very much like a fraudulent transaction. Before and at the time of the sale of this property to James Digby, the validity of which is now questioned, Digby & Sears were indebted to various persons in the sum of about $10,000. Of this, about $2,700, due to several persons in various amounts, had been, a few days before the sale, secured by several mortgages upon the real estate sold to James Digby. In December, 1846, Theodore Digby and Digby & Sears convey to James Digby all of their real and personal estate, including the real estate mentioned in the bill, and two stocks of goods, with which the firm had been doing business. What was the value of the real estate the testimony does not inform us; but it appears that the stocks of goods were worth about $3,500. The deeds of conveyance for the real estate, express the consideration of one dollar. The answers show, that at the time of the transfer of the real and personal estate, and in consideration thereof,

James Digby executed to Digby & Sears, his five several promissory notes, for the aggregate sum of $6,299, payable in two, three, four, five, and six years from date. The answers further show, that it was agreed between the parties, at the time, and as a part of the original transaction, that James Digby should pay these notes by liquidating that amount of the indebtedness of Digby & Sears, and that he should sell the real estate, and with the proceeds pay off the incumbrances upon it ; and if there should be any surplus, to apply that also in the payment of the debts of the firm. At the time of the transfer the creditors were pressing their demands against the firm.

These are the leading features of the transaction, about which there is no dispute, and it admits of but one construction. The purpose to be subserved by it, is hardly attempted to be disguised. That was to place all of the property of the debtors beyond the reach of their creditors. The debtors were insolvent; their creditors importuning for their pay. They transfer all their property, both real and personal, to a brother of one of the debtors, upon such terms as leaves it out of their power to pay one dollar of their debts, at least before the expiration of two years, and leaving nothing within the reach of the creditors with which they may seek satisfaction. The real estate is expressed to be conveyed for a nominal consideration, but, as the defendants say in their answer, with the secret trust to pay the debts of the grantors. It is not even pretended that this was an absolute sale of the property. If this transaction had expressed upon its face, what the parties now say it really was, an assignment in trust to pay the debts of the assignors, it could not stand the test of legal scrutiny for a moment. As an assignment in trust to pay creditors, it is void, because it fails to fix the rights of the creditors, or to secure them. After the payment of the second debt, every thing is left to the discretion of the trustee. He may pay whom he pleases, and when he pleases. He is at liberty to coerce the other creditors into such a compromise as he may choose to dictate. He is not bound to distribute the fund *pro ratâ* among all the creditors, or to pay it to any specified creditors. With the funds in his hands beyond the reach of legal process, he might say to any creditor, unless

you will take fifty cents on the dollar and release your claim, you shall get nothing, for enough will be found before the expiration of six years, who will be glad to do so, and thus absorb all the fund. No matter what may have been the real motives of the parties, this feature of the transaction is, of itself, sufficient to condemn it, as a legal fraud. Put the most favorable construction upon it possible, and the true features of the transaction are covered by a very flimsy veil. A debtor in failing circumstances is only allowed to place his property beyond the reach of his creditors, by making a general assignment of all his property, when he does so for the benefit of the creditors, by devoting it fairly to the payment of his debts, and not with a view to his own advantage, by forcing them to release their claims for less than the amount due.

When, in December, 1847, Digby & Sears found their debts pressing upon them, it was their duty so to arrange their affairs as to meet their liabilities, with the means at their disposal. How did they discharge this duty? Instead of disposing of their property, so as to enable them to meet their accruing liabilities, they sold it all to a confidential friend, on a credit of from two to six years. Without any security, they took the notes of the purchaser for between $6,000 and $7,000, when he was entirely irresponsible for that amount; for the evidence shows that he was not worth more than $1,000 or $1,200 at that time. Now, would any sane man, acting in good faith, with a design to meet his pressing liabilities, adopt such a course? How could he expect to meet liabilities now due, when he put all his means beyond his own control for at least two years, and most of them for a much longer time? The bare statement of the proposition is sufficient to show the bad faith of the transaction. This assignment was not made by the assignors with the design to devote their property fully and fairly to the payment of their debts, but with the design to force their creditors into a compromise, for their own advantage. This was not a sale in the ordinary course of business, on a credit. On the contrary, it was an entire disposal of all the debtors' property, a breaking-up of their business, and virtually, a dissolution of their partnership. It was not a sale in continuation of their business,

made in an honest struggle to retrieve their fortunes; but it was an abandonment of their business, and an evident relinquishment of all hope of future success, and evincing only a hope of a future compromise with their creditors. Here was no mistake of judgment in an honest endeavor to meet their liabilities, but a transaction clearly evincing a deliberate design to set their creditors at defiance.

Nor can James Digby claim the character of a *bonâ fide* purchaser, without notice of the intended fraud. The answers show, that he was cognizant of the nature and extent of the indebtedness of Digby & Sears, and indeed, of all the circumstances which show the transaction to be fraudulent. He was aware, and participated in the design of the debtors to place the property beyond the reach of the creditors. Indeed, he was the willing instrument, in the hands of the debtors, to force the creditors into satisfactory terms. As against the creditors, we must hold this transfer to him to be void.

The complainants, by their bill, only seek to subject the real estate, which was transferred to James Digby, to the payment of their judgments, after satisfying the amount justly due upon the mortgages. This record shows, that the Goodrich mortgage has been paid. Goodrich swears that James Digby paid him the amount of his claim upon that mortgage, and took an assignment thereof to himself. James Digby says, in his answer, that pursuant to the agreement which he had made with Digby & Sears, at the time of the assignment, he had paid to Goodrich $600 upon the mortgage, and that the balance remains unpaid; but says nothing about the assignment. If he made the payment to Goodrich under that agreement, he made it with the funds of Digby and Sears; and there is no pretence that the payment was not made for them, and on their account. If the Goodrich mortgage has been paid, it has been paid by them through their agent; and, as Goodrich says it has been paid, we must treat it as satisfied. So long as James Digby was acting as the agent of the debtors in paying the mortgage, he could not continue it as a subsisting lien upon the premises, by taking an assignment of it to himself.

For aught that appears upon this record, the other mortgages

appear to be valid and subsisting liens upon the premises described in them; but as it is probable that the premises left unincumbered by the satisfaction of the Goodrich mortgage, will be sufficient to satisfy the amount due the complainants, it may not be necessary to inquire how much is due upon the other mortgages.

The decree of the Circuit Court must be reversed, and the suit remanded, with instructions to that court to enter a decree declaring the conveyances from Digby & Sears to James Digby to be fraudulent and void, as to the creditors of Digby & Sears; also declaring that the mortgage to Goodrich has been paid and satisfied, and directing that so much of the real estate mentioned in the bill, as may be necessary to pay the amount due the complainants, be sold for that purpose, subject to *bonâ fide* incumbrances existing upon the premises, and that the defendants pay the costs.                    *Decree reversed.*