Stephen S. Phelps *et al.*

*v.*

John F. Curts *et al.*

1.   Fraudulent conveyances — *a conveyance of property to place it beyond the reach of creditors is fraudulent in law.* A debtor in failing circumstances is only allowed to place his property beyond the reach of his creditors by making a general assignment of it, when he does so for the benefit of the creditors, by devoting it unreservedly to the payment of

his debts, and not with a view to his advantage, in delaying until a favorable time the appropriation of the property for such purpose.

2.  A conveyance by a debtor in failing circumstances of all his property, for the purpose of placing it out of the reach of creditors, not for the purpose of depriving them of all benefit of the property, but to prevent its sacrifice for the payment of their claims by enforcement of legal remedies, and to await favorable opportunities for disposing of the property and applying it to the satisfaction of the claims, is fraudulent in law, although there may be no fraud in fact intended by such debtor.

3.  SAME—*when only constructively fraudulent may be upheld as to one guilty of no actual fraud.* Where a security or conveyance is set aside as constructively fraudulent, it may be upheld in favor of one not guilty of any actual fraud to the extent of the actual consideration, and be vacated as to the excess.

4.  SAME—*conveyance by grantee in a fraudulent conveyance to secure a bona fide debt of the debtor grantor.* A debtor in failing circumstances conveyed to his brother all his property, and the brother took up notes which the owner of the property owed to another brother, and gave his own notes for the amount thereof, with the understanding that he was to pay them out of the proceeds of the sale of the property conveyed to him, or he was to have the privilege of paying in property, at cash value. Afterwards he conveyed to the brother holding his notes a portion of the property, with a verbal agreement that, upon payment of the notes, the property so conveyed should be reconveyed to him: *Held,* that although the conveyance by the failing debtor to his brother was fraudulent as against creditors, yet the conveyance by that brother to the other, being for the purpose of securing a *bona fide* indebtedness, was not void, but should be treated as a mortgage; and that upon a creditor's bill to set aside such conveyances, the decree should be that such second conveyance be treated as a mortgage, and that the debt intended to be secured thereby have precedence over the other debts of the debtor, and be first paid.

5.  CREDITOR'S BILL—*personal decree against defendants not debtors.* It is error, on a creditor's bill to set aside conveyances as fraudulent, to render a personal decree for the amount of the debts due to complainants as against one guilty of no fraud and not a debtor.

6.  SAME—*effect of discharge of debtor in bankruptcy.* Where a debtor, after a creditor's bill is filed against him, is declared a bankrupt, and as such discharged, and sets up his discharge in that suit, the effect is to preclude the court from rendering a personal decree against him, but it can not preclude the court from dealing with the property alleged to have been fraudulently conveyed, in the creditor's bill.

APPEAL from the Circuit Court of Henderson county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. STEWART, PHELPS & STEWART, Messrs. SKINNER & MARSH, and Mr. O. H. BROWNING, for the appellants.

Mr. C. M. HARRIS, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a creditors' bill, brought by certain judgment creditors of S. S. Phelps & Co. against Stephen S. Phelps, William Phelps and Myron Phelps, for the discovery of assets, and to subject certain property which had been conveyed by Stephen S. Phelps and Arthur S. Phelps, composing the firm of S. S. Phelps & Co., to the payment of the complainants' demands.

A decree was rendered against the defendants in the court below, from which they appealed.

Previous to August, 1861, S. S. Phelps & Co. had been largely engaged in the mercantile and banking business in Oquawka, in this State, and S. S. Phelps, individually and as a member of the firms of S. S. Phelps & Co. and Phelps & Rice, was at that date indebted to the amount of some $174.000, and he. and said firm of S. S. Phelps & Co.. being pressed for payment of their indebtedness, and in failing circumstances, S. S. Phelps, about that time. by different conveyances, conveyed to his brother, William Phelps, large quantities of real estate, and made transfers to him of a large amount of notes and accounts and other personal property. S. S. Phelps and Arthur Phelps conveyed some real estate in like manner. These conveyances and transfers comprised, essentially. all of the property of S. S. Phelps. Subsequently, William Phelps conveyed a portion of such real estate to another brother, Myron Phelps.

The main object of the bill is to impeach these conveyances and transfers as being fraudulent as against creditors. In the

respect that the decree finds the conveyances and transfers from S. S. Phelps, and from him and Arthur to William Phelps, to be fraudulent as against creditors, we are entirely satisfied with its correctness. It appears, that on the 21st of August, 1861, S. S. Phelps conveyed to William Phelps a large amount of real estate, for the expressed consideration of $39,-787, for which the latter executed to the former his three promissory notes, for $13,262.33 each, payable in four, five and six years, with interest. The proofs abundantly show that this was but in form a sale—that it was in reality but a device to place the property in the hands of William beyond the reach of creditors, to prevent its appropriation by them in legal mode, to the satisfaction of their debts against S. S. Phelps. The same may be said with respect to the other conveyances and transfers declared void by the decree.

The answers of the defendants were required to be under oath, and they fully deny, in their answers, all fraud or intention to defraud; and it is insisted, that the answers must be taken as conclusive in this respect, there not being sufficient countervailing proof. There might have been no intention to actually defraud creditors, and the defendants might well have answered, under oath, as their conclusion, that there was no fraud, and yet there have been a legal fraud. We can not think, from the evidence, that there was any actual defrauding of creditors intended, by depriving them of all benefits of the property, but that the purpose was to place it without the reach of creditors, to prevent its sacrifice for the payment of their claims by enforcement of legal remedies, and to await opportunities, as they might afterward arise, for advantageously disposing of the property, and to apply the proceeds toward the satisfaction of such claims, the parties believing, perhaps, that the arrangement would be for the best interests of the creditors, as a whole. But the creditors were, by the conveyances, effectually hindered and delayed in the collection of their demands; they were prevented from resort to the property; the debtor deprived himself of all means for

paying any of his indebtedness for at least four years, the length of time the shortest note had to run ; an opportunity was secured to make use of the means to coerce creditors into compromises of their claims, and to constrain them to accept real estate in satisfaction of debts, at such prices as might be satisfactory to the debtor.

Whatever the real motives of the parties, such a disposition of a debtor's property is a legal fraud.   Bump Fraud. Conv. 68, and cases cited in note.

A debtor, in failing circumstances, is only allowed to place his property beyond the reach of his creditors by making a general assignment of it, when he does so for the benefit of the creditors, by devoting it unreservedly to the payment of his debts, and not with a view to his advantage, in delaying until a favorable time the appropriation of the property for such purpose.   *Nesbitt et al.* v. *Digby et al.* 13 Ill. 387.

In regard to the conveyances from William to Myron Phelps, it appears that the latter held two promissory notes executed to him by S. S. Phelps & Co., bearing date at St. Louis, Mo., April 1, 1858, one for $12,000, payable one year after date, with interest at ten per cent per annum after maturity, and the other for $10,000, payable two years after date, with interest at ten per cent per annum after one year.   That in August, 1871, on the application of William Phelps, and his representation that he wanted to get the notes to apply in part payment of property he was about purchasing from S. S. Phelps and S. S. Phelps & Co., Myron Phelps sold and assigned said notes to William Phelps, and took in payment therefor the note of the latter for the sum of $25,594.43, that being the amount then due on the said notes of S. S. Phelps & Co. ; that such note of William Phelps was to be paid in sums of $5000 or more, yearly, as fast as he could realize it out of the property he was about to purchase of S. S. Phelps and S. S. Phelps & Co., the whole sum to be paid within five years from the date of the note, with the privilege of paying property, at cash value, if unable to realize money from the prop-

erty ; and that the conveyances in question, from William Phelps to Myron Phelps, of a large amount of the property which had been conveyed by S. S. Phelps to William Phelps, though absolute in form, were taken as security for the payment of said note of William Phelps, Myron Phelps making, at the same time, a verbal agreement to reconvey the property to William Phelps upon payment of the note. From time to time, afterwards, Myron Phelps, without receiving any consideration, executed conveyances of divers pieces of the property, as William Phelps found purchasers therefor.

The decree found these conveyances to Myron Phelps to be fraudulent, and declared them to be void as against the complainants. The propriety of this part of the decree, we think, must depend upon the question whether the two notes of S. S. Phelps & Co. to Myron Phelps, of April 1, 1858, were given for a *bona fide* indebtedness, and remained unpaid at the time of their transfer to William Phelps.

The answers show, and they are sustained in this respect by the evidence, that the notes were given for $20,000, money lent by Myron Phelps to S. S. Phelps & Co., and that only a payment of $1700.15, May 7, 1861, had ever been made on them. There is nothing whatever in the evidence contradictory thereto, more than the circumstances of the case which have been detailed. It must be considered, under the proofs, that Myron Phelps took the conveyances to him as security for the payment of a just indebtedness due him, and we see no sufficient reason why he should not be allowed to hold them for such purpose.

Whatever may have been the character of the transaction between S. S. Phelps and William Phelps, we find no sufficient evidence to connect Myron Phelps with it, either as a participant or as having knowledge thereof. It would seem, at the most, that the conveyances to Myron Phelps were no more than constructively fraudulent, and the rule is well settled, in equity, that when a security or conveyance is set aside as constructively fraudulent, it may be upheld, in favor of

one not guilty of any actual fraud, to the extent of the actual consideration, and be vacated only as to the excess. *Wright et al.* v. *Stanard*, 2 Brockenbrough, 312 ; *Coley* v. *Coley*, 1 McCarter Ch. R. 350 ; *Demorest* v. *Terhune*, 3 C. E. Green Ch. R. 532 ; *Boyd* v. *Dunlap*, 1 Johns. Ch. 478 ; *Clements* v. *Moore*, 6 Wall. 299.

We are of opinion, then, that the decree was wrong in declaring the conveyances from William to Myron Phelps to be utterly void as against the complainants, and appropriating the real estate therein described unqualifiedly to the satisfaction of the debts due to the complainants. We think the debt due from William to Myron Phelps was entitled to priority of payment out of that real estate.

The decree declared a lien upon certain specified portions of the real estate described in the last mentioned conveyances, for the satisfaction of the sum of $9808.96, the amount due to the complainants from "said defendants," and the costs of the suit, and then ordered that "said defendants" pay to the master in chancery the amount so due to the complainants, together with interest and costs, in ninety days, which payment should discharge the lien, and then directed that, in default of payment, such real estate be sold for satisfaction of said amount. This appears to be a personal decree against S. S. Phelps, William Phelps and Myron Phelps jointly, in favor of the complainants, for the amount of their judgments. There is surely nothing in the record to justify any personal decree against Myron Phelps, nor, as we can see, against William Phelps, to the extent of the amount due the complainants. The decree is erroneous in this respect.

The decree is further for a recovery by the complainants against William Phelps, of $8711.75. This appears to be for indebtedness from William to S. S. Phelps, and for avails of fraudulently conveyed property received by William Phelps.

Besides the general objection, of no fraud in the conveyances, it is objected to this portion of the decree, that it is an

additional decree for part of the amount due the complainants, making a double recovery to that extent, and that the decree is in favor of complainants jointly for the amount of their several judgments, this last objection being likewise made to the joint personal decree against the defendants. This decree against William Phelps alone was not an absolute one, but conditional upon the insufficiency of the real estate upon which a lien was declared, to satisfy the complainants' judgments, and was to stand as a decree only for any deficiency, not exceeding such sum recovered, of the real estate, to satisfy the declared amount of said judgments, such deficiency, if any, to be ascertained by a sale of the real estate.

As to the joint form of the decree in favor of complainants, however it may be as to the personal decree against all the defendants, we do not find it to be such in fact as respects the decree against William Phelps alone. The decree against him is in favor of the complainants for the amount of the recovery in the proportion which the respective claims of each of them bear to such amount, the precise amount then due on each of their respective claims having been previously found by the decree. These objections are without force.

Any debts of S. S. Phelps, or of S. S. Phelps & Co., which William Phelps may have paid previously to the filing of the present bill, should be deducted from whatever proceeds he may have received from the fraudulently conveyed property ; and in rendering any personal decree against him on account of said proceeds, it should only be for the balance after such deduction. But the answers are not to be received as evidence of any such payments. They must be established by other proof.

The bill in this cause was filed September 24, 1862. The complainants' judgments were recovered in May, 1862. At the March term, 1872, of the circuit court, the defendants filed their cross-bill herein, setting forth that, since filing their answers, in September, 1863, Stephen S. Phelps filed in the District Court of the United States for the Northern District

of Illinois, on the 26th day of February, 1868, his petition in bankruptcy ; that, on the 7th day of March, 1868, he was adjudged a bankrupt; that, on the 15th day of June, 1868, one Elias Willets was appointed his assignee in bankruptcy ; that, on the 12th day of January, 1869, said Phelps was discharged by said District Court from all his debts existing in 1868, save those excepted by act of Congress, and received his final order of discharge in bankruptcy; that the debts due complainants existed long before 1868, and were not excepted by the act of Congress; that the assignee accepted the office and discharged its duties to the approval of the District Court, made final settlement, and had been by the District Court discharged ; that complainants did not prove any of their debts in the Bankrupt Court, nor did the assignee ever interfere in this cause in any way.

The circuit court sustained a demurrer to the cross-bill, and dismissed the same, and this is assigned for error.

We perceive nothing in the matter of the cross-bill which should constitute a bar to complainants' claim for relief. The fraudulent conveyances, here, were not void, but only voidable by creditors, so that the property embraced in the conveyances did not vest absolutely in the assignee in bankruptcy as a portion of the bankrupt's estate ; there was merely an option with the assignee, on behalf of the creditors, to impeach and avoid the conveyances or not, as he might see fit. He saw fit not to do so. Hence the bankruptcy proceeding seems to be without effect as respects this property, unless to debar other creditors from asserting any claim with regard to it, by reason of the discharge of their demands. Phelps' final discharge in bankruptcy from his liabilities should not operate to deprive the complainants of the benefit of their priority and right of lien which they acquired in respect to the property involved in their bill, by the filing of the same. They are entitled, we conceive, to the fruits of their diligence in the institution of their suit, notwithstanding the intervening proceeding in bankruptcy.

It is said the cross-bill shows the proceedings to be defective; that the assignee is a necessary party, and should have been made such. But the cross-bill alleges that the assignee has made a final settlement, and has been discharged. There is, then, now no assignee, to be made a party. Moreover, the Bankrupt Act limits the time for bringing a suit between an assignee in bankruptcy and a person claiming an adverse interest, touching any rights of property transferable to the assignee, to two years from the time when the cause of action accrued for or against such assignee. The assignee having been appointed June 15, 1868, nearly four years had elapsed since then and the accruing of any cause of action as respects the assignee, when the cross-bill was filed, and so any right of action of the assignee had been barred.

The discharge in bankruptcy should have prevented any personal decree against S. S. Phelps further than as respected the property covered by the bill. The same facts that are alleged in the cross-bill the defendants set up by way of answers, but exceptions were sustained thereto, and defendants ruled to set the matter up by cross-bill. Had there been no personal decree against S. S. Phelps for the amount of complainants' judgments, we should hold there to have been no error in sustaining the demurrer to, and dismissing the cross-bill. But there was error in excluding the setting up in any form the discharge in bankruptcy, and then rendering the personal decree against S. S. Phelps.

In bar of any personal decree against him further than the subjecting of the property and claims covered and reached by complainants' bill, to the satisfaction of their judgments and costs of suit, he should have been allowed to set up, in some form, his discharge in bankruptcy.

In so far as the decree sets aside, unqualifiedly, the conveyance from William Phelps to Myron Phelps, without allowing to the latter priority of payment from the property conveyed, of his debt against William Phelps; and in so far as the decree is personal against S. S. Phelps, Myron Phelps and Wil-

liam Phelps, or either of them, for the payment of money, the decree is reversed; in all other respects it is affirmed, and the cause is remanded for further proceedings in conformity with this opinion.

The costs in this court will be equally divided between the parties.

*Decree reversed in part.*