## J. WALTER THOMPSON COMPANY

*v.*

## H. L. WHITEHED, Assignee.

*Opinion filed April 17, 1900.*

1. APPEALS AND ERRORS—*appellee should assign cross-error to preserve trial court's rulings for review.* Upon appeal from a judgment of the Appellate Court reversing the decree of the trial court, the appellant cannot assign error upon rulings of the chancellor to which he made no objection in the Appellate Court.

2. VOLUNTARY ASSIGNMENTS—*a right to make common law assignment presumed to exist in foreign States.* The right to make a voluntary assignment for the benefit of creditors existed at common law, and is to be regarded as existing in each State of the Union unless shown to have been changed by the statute of such State.

3. CONFLICT OF LAWS—*when foreign voluntary assignment will be enforced in Illinois.* A common law assignment for the benefit of creditors generally, which is valid by the laws of the State where made, will be enforced in Illinois as against a non-resident creditor who has attached the property while in possession of the assignee.

4. CORPORATIONS—*when foreign corporation cannot be considered as a domestic creditor.* A foreign corporation which has not complied with the statute concerning the obtaining of a certificate authorizing it to do business in Illinois at the time of the levy of its attachment upon goods situated in Illinois but in the possession of a foreign assignee for creditors, cannot be regarded as a domestic creditor, nor does it acquire any rights by virtue of its levy, since the law denies its right, under such circumstances, to maintain any action in Illinois.    (Laws of 1897, p. 174.)

*Whithed* v. *J. Walter Thompson Co.* 86 Ill. App. 76, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. W. BURKE, Judge, presiding.

This was a bill of interpleader filed by the Morgan
Storage and Warehouse Company, against appellant, ap-
pellee and others, to determine the ownership of certain
property in the hands of the warehouse company which
is claimed by appellee, as the assignee of the North Da-
kota Milling Company, a Dakota corporation, and by
appellant, a New Jersey corporation, as creditors of said
milling company, by virtue of a writ of attachment which
it caused to be levied thereon.   By an interlocutory de-
cree the complainant, the storage and warehouse com-
pany, was dismissed out of the case, and appellant and
appellee were required to interplead and set up their re-
spective claims to the property, or rather to the proceeds
in the hands of the clerk of court arising from its sale,
which had been ordered on petition of all the defendants.
By stipluation the attachment suit was dismissed and the
property in dispute sold, with the agreement the rights
of the parties should attach to the proceeds of the sale
and be adjusted in this proceeding.

It appears that April 16, 1897, the North Dakota Mill-
ing Company loaded the property in controversy, known
as "Cream of Wheat," upon a car consigned to Cushman
Bros. & Co., residents of the city of New York, who are
now out of the case, and received from the agent of the
railroad company a bill of lading in which the milling
company was made a consignor.   Three days thereafter
the said North Dakota Milling Company voluntarily exe-
cuted a common law deed of assignment, conveying to
appellee, as assignee, for the benefit of all its creditors,
all its property, of every name and nature, without pref-
erence.   Appellee accepted the trust, and, as required by
the deed of assignment, executed and delivered a bond
for the sum of $25,000, running to the judge of the dis-
trict court of the first judicial district of North Dakota,
conditioned for the faithful discharge of the trust.   He
at once took possession of all the assets of the insolvent
company and proceeded to administer the estate.   Among

other assets received by him was the bill of lading covering the car-load of cream of wheat shipped by the assignor three days before to Cushman Bros. & Co. He forthwith forwarded said bill of lading, with two drafts, of $500 each, attached, to the said Cushman Bros. & Co., the consignees named in said bill of lading, but the drafts being returned to him dishonored, appellee at once caused the car-load of cream of wheat to be stopped in transit. It was found at or near Englewood, in this State, and on or about May 10, 1897, appellee caused it to be placed in storage with the Morgan Storage and Warehouse Company in Chicago, subject to his order. Early in May appellee directed the warehouse company to ship ten cases of the cream of wheat to a customer at Buffalo, New York, which was done, and shortly after appellee paid the storage charges to the warehouse company and demanded the remainder of the property. This demand was not complied with, apparently because a similar demand was made about the same time by Cushman Bros. & Co., the New York consignees, who had refused payment of the drafts accompanying the bill of lading. Matters remained in this situation until July 29, following, when the appellant company instituted its suit in attachment, and thereupon the bill of interpleader was filed. The circuit court entered a decree sustaining the attachment, dismissing appellee's interplea, and ordering the money in the hands of the clerk, the proceeds of the sale of the attached property, to be paid to the appellant company. On appeal the Appellate Court for the First District reversed the decree and refused to remand the cause but granted a certificate of importance. This is an appeal by the appellant, the J. Walter Thompson Company, to reverse the judgment of the Appellate Court.

LOUIS J. PIERSON, for appellant:

A non-resident or foreign creditor has the same rights under the Attachment act of Illinois as a resident citizen,

and may enforce that remedy to the same extent and in the same manner as a citizen of the State.  *Rhawn* v. *Pearce,* 110 Ill. 358.

Neither the grantee nor the creditors of the grantor in a statutory or common law deed of assignment are purchasers.  They are but volunteers.  *Willis* v. *Henderson,* 4 Scam. 20; *Stow* v. *Yarwood,* 20 Ill. 499; *Hardin* v. *Osborne,* 94 id. 574; *Union Trust Co.* v. *Trumbull,* 137 id. 179.

A statutory assignee in North Dakota is not a purchaser, and the legality of such an assignment may be tested by attachment.  His possession is not *custodia legis.* *Enderlin Bank* v. *Rose,* 4 N. Dak. 326.

No court will take judicial notice of the laws of a foreign country or State.  They must be averred and proved as facts.  *Shannon* v. *Wolf,* 173 Ill. 260.

While the validity of a contract is determined by the *lex loci,* if such law is not averred and proved the court cannot presume the foreign law to be different from our own, but must presume it to be the same as our own. *Shannon* v. *Wolf,* 173 Ill. 260.

A failing debtor in Illinois is only allowed to place his property beyond the reach of his creditors by attachment, by making a general assignment according to law. *Phelps* v. *Curts,* 80 Ill. 113; *Morrill* v. *Kilner,* 113 id. 321.

If a foreign assignment, if made in Illinois, would be set aside as contrary to the policy of our laws, our courts will not enforce it as against attaching creditors, whether foreign or domestic, although it may be valid in the State where made.  *Woodward* v. *Brooks,* 128 Ill. 227.

Possession of the goods assigned must not only be actually changed to the assignee, but such change must be continued.  Burrill on Assignments, (6th ed.) sec. 253, p. 329.

An assignee in a deed of assignment for the benefit of creditors takes no greater interest or better title than his assignor possessed.  *Davis* v. *Dock Co.* 129 Ill. 187.

When a party has the choice between two inconsistent remedies or causes of action, and, knowing the facts on

which his rights rest, deliberately adopts one, such election becomes conclusive upon him and precludes him from subsequently adopting the other. *Kaehler* v. *Dobberpuhl,* 60 Wis. 261; *Warren* v. *Landry,* 74 id. 151; *Crook* v. *Bank,* 83 id. 41; *Terry* v. *Munger,* 121 N. Y. 167; *Nield* v. *Burton,* 49 Mich. 54; *Farwell* v. *Myers,* 59 id. 182.

ALDEN, LATHAM & YOUNG, for appellee:

Where an assignee under a common law deed of assignment once gets possession of property he can hold it against any attachment by creditors of his assignor, either foreign or domestic, and in whatever jurisdiction the property may be found. *Railroad Co.* v. *Packet Co.* 108 Ill. 317; *Long* v. *Forest,* 150 Pa. 413; *Reynolds* v. *Adden,* 136 U. S. 348; *Cole* v. *Cunningham,* 133 id. 97; *Cook* v. *Orange,* 39 Conn. 41; *Bank* v. *Steel Co.* 30 Atl. Rep. 545.

The attaching creditor in this case is a resident and citizen of the State of New Jersey. The common law deed of assignment was executed in North Dakota. This contest is between a New Jersey creditor of a North Dakota corporation and the assignee of such corporation. A voluntary assignment of a non-resident will effectually pass the title to a foreign assignee of property of the assignor situated in this State or in any State, as against subsequent attachment of such property by a creditor of the insolvent, a non-resident of this State, where the law of the State where the assignment is made is not inconsistent with or contrary to the policy of the law of this State. *Heyer* v. *Alexander,* 108 Ill. 385; *Townsend* v. *Coxe,* 151 id. 62; *Railroad Co.* v. *Packet Co.* 108 id. 317; *Juilliard* v. *May,* 130 id. 87; *Woodward* v. *Brooks,* 128 id. 222; *Rhawn* v. *Pearce,* 110 id. 350; *Tank Line Co.* v. *Collier,* 148 id. 259; *May* v. *Bank,* 122 id. 151; *Holbrook* v. *Ford,* 153 id. 633.

A common law deed of assignment executed by a corporation is valid wherever made, unless prohibited by statute. *Covert* v. *Rogers,* 38 Mich. 363; *Boynton* v. *Rowe,* 17 N. W. Rep. 257; *Union Trust Co.* v. *Trumbull,* 137 Ill. 146;

*Howe* v. *Warren*, 157 id. 227;  *Blair* v. *Steel Co.* 159 id. 350;
Burrill on Assignments, (6th ed.) sec. 45.

The right to make an assignment existed at common
law, and now exists in every State unless prohibited by
statute.   *Union Trust Co.* v. *Trumbull*, 137 Ill. 146;  *Hanchett*
v. *Waterbury*, 115 id. 22;  *Howe* v. *Warren*, 154 id. 227;  *Winter*
v. *Maddox*, 1 S. W. Rep. 168;  *Egbert* v. *Baker*, 20 Atl. Rep.
466;  *Barnhart* v. *Kennedy*, 147 U. S. 476;  *Vanderpool* v. *Gorman*, 140 N. Y. 563.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The appellant company urges the chancellor erred in
admitting in evidence, over its objections, proof of the en-
actments of the General Assembly of the State of North
Dakota in relation to trusts and assignments.   The ap-
pellant here was successful in the trial below and was
appellee in the Appellate Court.   It did not assign cross-
errors on the record in the Appellate Court, and cannot
be allowed to assign as for error in this court any ruling
of the chancellor to which it made no objection in the
Appellate Court.   *Newell* v. *Sass*, 142 Ill. 104.

It was clearly proven the appellee assignee secured
the possession of the goods in controversy and placed
them in storage with the said Morgan Storage and Ware-
house Company.   This is not controverted.   But appellant
contends it was established by certain letters written by
the appellee assignee to the storage company that said
appellee abandoned all right or claim of possession or
dominion over the goods, and did not claim the goods
were in his possession at the time it caused the attach-
ment writ to be levied.   We have examined these letters
and considered the statements therein contained, to-
gether with certain telegrams and other facts and cir-
cumstances disclosed by the evidence bearing on the
point.   These letters and telegrams were addressed to
the Morgan Storage and Warehouse Company, and, with
the exception of one of the letters, related solely to a

controversy between the appellee, as assignee, and the said Cushman Bros. & Co., who had asserted and were asserting a right to the possession of the goods as consignees, and had no reference whatever to any claim of the appellant company. The letter written after the levy of the attachment, was written in reply to notice given by the storage company that an attachment had been levied on the goods. The statements contained therein are, in substance, that the appellee's view is he should not defend the attachment suit but should require the storage company to pay him for the goods, but that he will refer the whole matter to his attorney. It does not appear the appellant company had any knowledge of any of these letters or telegrams when the attachment suit was brought or that its course was in any manner affected or controlled by them. It appeared from the proof on the point, the appellee assignee at all times claimed the ownership of the goods and the right to the possession thereof, and his intention to invoke all necessary legal remedies to protect his possession, or to recover the value of the goods if deprived of their possession. We think it clearly appeared from the proofs the possession of the goods by the storage company at the time the attachment writ was issued was the possession of the appellee assignee.

The question for decision then is, did the appellant company, a corporation organized under the laws of the State of New Jersey, by means of the attachment writ issued under the laws of this State, and the levy thereof on the goods in this State in the possession of the appellee as assignee, he being a resident of the State of North Dakota, obtain a lien on the goods superior to the right of the appellee as such assignee?

The appellant insists it appears from the enactments of the law-making power of the State of North Dakota offered in evidence, common law or voluntary assignments for the benefit of creditors are not permitted, but that

debtors desiring to make assignments for the benefit of creditors do so under the provisions of the code adopted by that State, governing, as appellant contends, the entire question of such assignments.   The North Dakota code to which appellant refers applies only to a debtor whose aggregate indebtedness amounts to $500, and who takes advantage of the act for the "purpose of obtaining a discharge from his debts." It is in the nature of a bankruptcy act, having the effect to relieve the debtor of further liability to respond to his creditors, and is not available to debtors who do not owe at least $500 in the aggregate.   The assignment is not made by the debtor, but by the clerk of the court to an assignee selected by the creditors.   The filing of the petition in the district court is apparently the only voluntary act required of the debtor.   Such a proceeding is a statutory one as distinguished from a voluntary assignment.   We do not regard this enactment as affecting the right of a debtor resident in North Dakota to execute a common law deed of assignment for the benefit of his creditors, leaving him still liable to answer all demands not discharged in full out of the assigned estate.   That code has no reference to a debtor who owes less than $500, nor to any debtor other than those who voluntarily invoke it in order to be discharged as to all their debts.   We would not impute to the State of North Dakota the intention to require a debtor residing in that State to apply, under that statute, to be relieved from any and all obligations to his creditors, and to deny to such debtor the common law right to convey his property to an assignee for the benefit of his creditors, he also remaining liable to them.   It was not proven common law assignments are expressly prohibited by the laws of North Dakota.   This code does not prohibit such assignments directly or by implication. The right to make an assignment existed at the common law, and is to be regarded as existing in each of the States of the Union unless shown to have been changed

or abrogated by statute.  The deed of assignment in question conveyed all the property of the debtor for the benefit of all of his creditors, without distinction or preference.  In that respect it is not antagonistic to the policy of our laws.  Our statute respecting voluntary assignments does not create the right to make such an assignment, but only places restrictions on the exercise of the common law right possessed by the debtor to so dispose of his property.  (*Hanchett* v. *Waterbury*, 115 Ill. 220; *Union Trust Co.* v. *Trumbull*, 137 id. 146; *Howe* v. *Warren*, 154 id. 227.)  The assignment to the appellee was not a statutory one, but a voluntary common law assignment on the part of the debtor.  It was valid by the *lex loci*, and will be carried into effect here as against a creditor non-resident of this State who has levied a writ of attachment on property in the possession of the assignee under the authority of such assignment.  *Heyer* v. *Alexander*, 108 Ill. 385, *May* v. *First Nat. Bank*, 122 id. 551, and *Townsend* v. *Coxe*, 151 id. 62, discuss the doctrine here involved and in principle support the conclusion here announced.  See, also, 3 Am. & Eng. Ency. of Law, 571, 572.

*Rhawn* v. *Pearce*, 110 Ill. 350, did not involve the question here presented.  In that case a firm resident in Illinois was indebted to one Landenberger, a resident of the State of Pennsylvania.  An attachment writ was issued in this State at the instance of a foreign creditor of Landenberger, and the Illinois debtor firm was garnisheed and made answer admitting the indebtedness.  Trustees appointed under the provisions of the statutes of Pennsylvania, with authority to receive the property of Landenberger and administer the same for the benefit of his creditors, interpleaded.  It was held the fund was in Illinois and was subject to the remedies provided by our laws for the collection of debts by the process of garnishment, and that the attaching creditor secured prior right thereto.  In the case at bar the subject matter of the litigation is personal property which the foreign

assignee had reduced to possession.  Having possession, his right would be superior to that of a foreign creditor seeking to dispute such possession by the medium of the process of attachment.

It is urged the policy of our law does not permit the withdrawal of funds or property by a foreign assignee while the demands of creditors resident in the State remain unpaid, and it is insisted the appellant company is to be regarded as a domestic creditor and entitled to the benefit of the operation of this rule, and for that reason its lien should be regarded as superior to the right of the appellee assignee to the goods.  It appeared the appellant company is a corporation organized under the laws of the State of New Jersey for the purposes of profit and gain; that at the time of the institution of the attachment suit, and for some four or five years previous thereto, it had maintained a branch office in this State and transacted its business here; that the indebtedness sought to be recovered by the process of attachment grew out of contracts for advertising entered into with the insolvent North Dakota corporation in the State of Illinois in the year 1896 and up to April, 1897.  On the 26th day of May, 1897, an act of the General Assembly of the State of Illinois, (Laws of 1897, p. 174,) being an act to require every foreign corporation doing business in this State to have a public office or place where it transacted its business, and to file its articles of incorporation with the Secretary of State, etc., was approved.  The act went into effect July 1, 1897.  By section 1 of the act the appellant company was required, "before it shall be authorized or permitted to transact business in this State, or to continue business therein, if already established, shall have and maintain a public office or place in this State for the transaction of its business, where legal service may be obtained upon it and where proper books shall be kept to enable such corporation to comply with the constitutional and statutory provisions governing such corpora-

tion." By section 2 of the act it was required to "file in the office of the Secretary of State a copy of its charter or articles of incorporation, or in case such company is incorporated merely by a certificate, then a copy of its certificate of incorporation, duly certified and authenticated by the proper authority; and the principal or agent in Illinois of the said corporation shall make and forward to the Secretary of State, with the articles or certificates above provided for, a statement duly sworn to of the proportion of the capital stock of the said corporation which is represented by its property located and business transacted in the State of Illinois; and such corporation shall be required to pay into the office of the Secretary of State of this State, upon the proportion of its capital stock represented by its property and business in Illinois, incorporating taxes and fees equal to those required of similar corporations formed within and under the laws of this State. Upon a compliance with the above provisions by said corporation, the Secretary of State shall give a certificate that said corporation has duly complied with the laws of this State and is authorized to do business therein." Section 3 of the act, after providing for the imposition of a fine for the failure to comply with the provisions of sections 1 and 2, is as follows: "In addition to which penalty on and after the going into effect of this act, no foreign corporation, as above defined, which shall fail to comply with this act, can maintain any suit or action, either legal or equitable, in any of the courts of this State upon any demand, whether arising out of contract or tort."

The attachment suit was instituted on the 29th day of July, 1897, and the levy was made on that day. The appellant company had not complied with the requirements of the act before mentioned. The provisions of that portion of section 3 of said act hereinbefore mentioned declared the appellant company should not, in

consequence of such non-compliance, be permitted to maintain any suit or action, legal or equitable, in any of the courts of the State on any demand, whether arising out of contract or tort. No reason is perceived why the provisions of this act should not have full operation. Given such operation, the appellant company had no standing in the courts of Illinois to enforce a demand, and the insistence it was entitled to the privileges accorded by the policy of our law to a domestic or resident creditor is wholly untenable. It had no right to invoke action of any kind, under the laws of this State, in aid of the enforcement of any contract or the collection of any debt. It was proven the appellant company applied to the Secretary of State on the 19th day of August, 1897, —which was previous to the hearing of this cause,— for a certificate of compliance with the provisions of the enactment under consideration, but did not complete its application to the satisfaction of the Secretary of State until September 11, 1897, upon which date it received its certificate. But its rights are to be determined (at the latest) as of the date of the levy of the writ. If it did not secure a lien upon the property in dispute by the levy of the writ of attachment it was powerless to interfere with the possession and control of the goods by the assignee. It had not then complied with the conditions fixed by the statute as a pre-requisite to its right to invoke the aid of the courts of this State, and the right of the appellee assignee to retain the possession of the goods was superior to any right which could be obtained by the appellant company by virtue of the writ issued in a suit which it had no legal standing to institute.

The judgment is affirmed.   *Judgment affirmed.*