[No. 6552.]

## WESTERN ELECTRICAL COMPANY v. PICKETT ET AL.

1. LIMITATIONS—*Suspension of Statute by Suit*—Under Rev. Stat. Sec. 904 the attempted institution of an action in the courts of Colorado by a corporation organized under the laws of another state, which has not paid the privilege fee imposed by the statute, has not the effect to stay the course of the statute of limitations. When the statutory period has elapsed the action is barred even through during the whole of that period the action appeared upon the docket of the court as a pending action, and the corporation afterwards paid the tax—(420-424).

2. LIMITATIONS—*At What Time the Plea of the Statute may be interposed*—A foreign corporation not having paid the tax required by the statute institutes an action in defiance of the prohibition contained in Rev. Stat. Sec. 904. Its right to sue is promptly questioned. The whole period of the statute of limitations is permitted to run, without payment of the tax. The defendant then pleads the statute of limitations. The plea is in time, and could not have been pleaded at an earlier date—(424).

3. LIMITATIONS—*How to Avail of the Statute—In an Action for a Penalty*—A general denial presents the defense of the limitation prescribed by Rev. Stat. sec. 4068—(424).

*Error to El Paso District Court*—HON. W. S. MORRIS, Judge.

Mr. W. M. SWIFT and Mr. J. E. McINTYRE for plaintiff in error.

Messrs. McKESSON & LITTLE, Mr. T. C. TURNER and Mr. JOHN R. WATT for defendants in error.

Mr. JUSTICE HILL delivered the opinion of the court:

This controversy is over the meaning to be given a portion of General Sections 904 and 910, Revised Statutes, 1908; that portion of Section 904 involved reads:

"No such corporation, joint stock company or association shall have or exercise any corporate powers or hold or acquire any real or personal property, franchises, rights or privileges, or be permitted to do any business or prosecute or defend in any suit in this state until the said fee shall have been paid."

The portion of Section 910 involved, reads:

"No corporation * * * of any foreign state powers or acquire or hold any real or personal prop- or kingdom * * * shall exercise any corporate erty, or any franchises, rights or privileges, or do any business or prosecute or defend in any suit, in this state until it shall have received from the secretary of this state a certificate setting forth that full payment has been made by such corporation."

On January 12th, 1906, the plaintiff in error, a non-resident corporation, attempted the institution of this action by filing its complaint and causing a summons to be issued thereon. Thereafter, first by mo-

tion and then by answer, the defendants challenged the right of the plaintiff to prosecute this action, it being a foreign corporation, organized for pecuniary profit, was doing business in the state of Colorado, and the transactions out of which this litigation arose accrued in this state while it was doing business here. Also, the defendants pleaded the statute of limitations. The cause was tried to the court upon April 4th, 1908, upon an agreed statement of facts together with a special demurrer. Judgment was for the defendants for costs. The plaintiff brings the case here for review upon error.

The allegations of the complaint and the admitted facts justify the conclusion, that the plaintiff was a non-resident corporation organized for pecuniary profit; that it was doing business in this state within the meaning of the statute; that all the transactions involved transpired in this state so that no questions of interstate commerce, comity between sister states, or otherwise, are involved.

The record discloses that at the time the original complaint was filed (on January 12, 1906) the action was not then barred by the statute of limitations, but would have been on the 10th day of July, 1906, unless, by some action of the plaintiff, its operation was sus-. pended.

On March 7th, 1906, the defendants, by motion, raised the question of the right of the plaintiff to prosecute this action, it not having then complied with the statute. This motion appears to have been overruled. Thereafter, and on the 16th of July, 1906, the defendants by answer raised the same question. On June 22nd, 1907, which was before final trial, the plaintiff complied with the laws of Colorado in respect to foreign corporations.

This presents three questions for consideration. First, did the plaintiff, it not having then complied

with our laws, have a right to institute this suit or proceed with any steps in its prosecution after its right to do so was challenged? Second, did the plaintiff have the right to proceed with the prosecution of its suit after it was challenged, by thereby complying with the laws of this state in respect to foreign corporations? Third, if the plaintiff had the right to proceed with the prosecution of its action by thereafter complying with the laws of this state in respect to foreign corporations, did the attempted institution of its action in January, 1906, have the effect to at that time suspend the operation of the statute of limitations and keep it so suspended until it thereafter complied with the law, or did it continue to run in favor of the defendants until the law in this respect, was complied with by the non-resident corporation?

If the last question is answered in the negative, it makes unnecessary any decision upon the first two. There seems to be an irreconcilable conflict of authorities upon the entire question of such statutes. One line of authorities holds that all such contracts made by foreign corporations doing business in this state prior to the compliance with the act, are void and cannot thereafter, or at all, be enforced.—Section 7950, Vol. 6, 1st Ed., Thompson on Corporations.

Another line of cases holds that contracts made by such corporation while doing business in this state with citizens of the state, before complying with such conditions, are not absolutely, void, but the statute merely operates to suspend the remedy of the foreign corporation in the courts of the state upon such contracts until it shall have complied with the statutory conditions. This is upon the theory that until such compliance, an action by the foreign corporation to enforce the contract is prematurely brought, so that an answer setting up the non-compliance by the foreign corporation would be an answer in the nature of a

plea in abatement, and judgment in favor of the defendant would operate merely to abate the suit.—Section 7956, Thompson on Corporations, Vol. 6, 1st Ed.

This court appears to be committed to this last line of authorities upon the question that such contracts are not absolutely void.—*Utley et al. v. The Clark-Gardner L. M. Co.*, 4 Colo. 369; *Fritts v. Palmer*, 132 U. S. 282; *The International Trust Co. v. Leschen & Sons Co.*, 11 Colo. 299.

Other well reasoned cases, under similar statutes, seem to take the view that the plea in abatement is good, and upon account thereof an action instituted prior to a compliance with the act should be dismissed and the plaintiff be compelled to comply with the provisions of the statute, and then to institute a new suit in order to be allowed to prosecute its alleged cause of action.

In the case of *Caesar v. Capell*, 83 Fed. 403, in commenting upon a somewhat similar statute of the State of Tennessee, the court, speaking through Mr. Justice Hammond, quoted with approval from Vol. 6 Thompson on Corporations, as follows:

"A failure to comply with the regulations of the statute does not make the contract absolutely void, but only operates to suspend the remedy until such time as the foreign insurance company shall comply with the statute; that until such compliance should take place any suit brought to enforce the contract would be only prematurely brought, and a plea setting up the defense should be, not a plea in bar because of the invalidity of the contract, but only a plea in abatement to dismiss that particular suit."

To the same effect is *Crefeld Mills v. Goddard*, 69 Fed. 141, where it was held that the effect of such a statute is not to invalidate contracts made in the state by a foreign corporation doing business there without a certificate, but only to suspend the remedy

until such certificate has been procured. The New York act involved in that case states, in substance, that no foreign corporation shall do business in that state without having first procured from the secretary of state a certificate, etc., and further, that no such corporation doing business in that state without such certificate shall maintain an action in the state upon any contract made by it in that state until it shall have procured such certificate. In which case, the court also said:

"In many cases the delay to which a delinquent corporation would be subjected while endeavoring to secure a certificate might be injurious, and perhaps fatal, to its remedy upon a contract; and, doubtless, the legislature was of the opinion that the suspension of the remedy during the interim would furnish a sufficient incentive to coerce a compliance with the law."

To the same effect is the cause of *Neuchatel Asphalte Co., Limited, v. Mayor, etc., of New York,* 49 N. E. 1043.

But it is unnecessary to determine whether or not the plaintiff, by complying with the act after the question was raised, had a right to continue the same action thereafter. The only question necessary to determine is, was the running of the statute of limitation suspended by the attempted institution of the suit before compliance with the act? We answer in the negative. Our statute, in substance, says, that no such corporation shall do business until this fee is paid and other acts complied with. It does not state that any contracts so made ·shall be absolutely void, but it does state, positively, that no such delinquent corporation shall prosecute or defend in any suit until the act is so complied with, and we think, as here used, the word "prosecute" includes the institution of the suit.

The Standard Dictionary defines "prosecute" "to bring suit against, in a court, for redress of wrong or

punishment of a crime; to carry on a judicial proceeding against, as to prosecute a criminal; to seek to enforce or obtain as a claim or right, by legal process; to begin and carry on a legal proceeding."

Webster defines "prosecute" "To seek to obtain by legal process; the instituting and carrying on of a suit in a court of law or equity."

The Universal Dictionary defines "prosecution" "The instituting and carrying on of a suit in a court of law or equity to obtain some right, or redress and punish an injury or wrong."

In *Hickox v. Elliott,* 22 Fed. 19, the word "prosecute" as there employed in a code of civil procedure was held to mean in the sense of "commence."

With these definitions in mind and the sense in which the word appears to be used in these sections, it seems to us that no other construction can be placed on the word "prosecute" than to construe it as a prohibition against the bringing of an action, for the bringing of an action is certainly one of the necessary steps in its prosecution. This conclusion appears to be supported by the great weight of authority.—*Merchants' Insurance Co. v. Lacroix,* 35 Texas 249; *Heilman Brewing Co. v. Piemeisl,* 88 N. W. (Minn.) 441; *J. Walter Thompson Co. v. Whitehed,* 185 Ill. 454; *Cary-Lombard Lumber Co. v. Thomas,* 92 Tenn. 587; *Ehrhardt v. Robertson Bros.,* 78 Mo. App. 404; *Am. Copying Co. v. Eureka Bazaar,* 9 L. R. A. (S. D.) 1176.

To hold otherwise and give it the construction urged on behalf of the plaintiff would invite and foster the very evil it was intended to prevent. It would enable foreign corporations not only to do business in this state in defiance of our laws, but also to prosecute its suits for the enforcements of such business until some party perchance pleaded its non-compliance in an action brought by it to enforce a demand against him, then it would comply with the act, proceed with

the action and have its validity recognized from its inception, and during the entire time it was prosecuting it in the face of a positive prohibitory act to the contrary. Such a construction is contrary to the letter and spirit of the statute, and, if adopted by the court, would directly tend to defeat the public policy sought to be enforced by its enactment. The most efficient way to compel obedience to this statute is to enforce it as it reads, and not amend it by judicial construction so as to enable foreign corporations to avoid the consequences of a non-compliance with its terms by complying after the penalties have been incurred. Compliance after the commencement of an action will not remove the bar of the statute so as to give effect and recognize the validity of the action from its inception up to the time the satute was complied with.—*J. Walter Thompson Co. v. Whitehed*, 185 Ill. 454; *Cary-Lombard Lumber Co. v. Thomas*, 92 Tenn. 587; *Ehrhardt v. Robertson Bros.*, 78 Mo. App. 404; *Tri-State Amus. Co. v. Amusement Co.*, 192 Mo. 404; *G. Heilman Brewing Co. v. Piemeisl*, 88 N. W. (Minn.) 441.

The same principle involved here was under consideration in the case of *Thompson Co. v. Whitehed, supra*, where it was held that a foreign corporation, which had not complied with the statute concerning the obtaining of a certificate authorizing it to do business in Illinois at the time of the levy of an attachment upon goods situate in that state, but in the possession of a foreign assignee for creditors, cannot be regarded as a domestic corporation, nor does it acquire any rights by virtue of its levy, since, under such circumstances, the law denies its right to maintain any action in Illinois, until it has complied with the statute. In which case, that court said:

"The provisions of that portion of section 3 of said act hereinbefore mentioned declared the appellant company should not, in consequence of such non-compli-

ance, be permitted to maintain any suit or action, legal or equitable, in any of the courts of the state on any demand, whether arising out of contract or tort. No reason is perceived why the provisions of this act should not have full operation.  Given such operation, the appellant company had no standing in the courts of Illinois to enforce a demand, and the insistence it was entitled to the privileges accorded by the policy of our law to a domestic or resident creditor is wholly untenable.  It had no right to invoke action of any kind, under the laws of this state, in aid of the enforcement of any contract or the collection of any debt. It was proven the appellant company applied to the secretary of state on the 19th day of August, 1897,— which was previous to the hearing of this cause,—for a certificate of compliance with the provisions of the enactment under consideration, but did not complete its application to the satisfaction of the secretary of state until September 11, 1897, upon which date it received its certificate.  But its rights are to be determined (at the latest) as of the date of the levy of the writ.  If it did not secure a lien upon the property in dispute by the levy of the writ of attachment it was powerless to interfere with the possession and control of the goods by the assignee.  It had not then complied with the conditions fixed by the statute as a prerequisite to its right to invoke the aid of the courts of this state, and the right of the appellee assignee to retain the possession of the goods was superior to any right which could be obtained by the appellant company by virtue of the writ issued in a suit which it had no legal standing to institute."

We think this reasoning applicable here.  To hold that the attempted institution of the action, without first complying with the law, suspended the running of the statute of limitations against the claim, when the law provides that it shall institute no such action

without first paying the fee, would be to abrogate the only inconvenience or penalty which has been placed upon the non-resident corporation for its failure to comply with the provisions of the act and its violation of our law.

We conclude that the running of the statute of limitation was not barred until the plaintiff had the right to, and had lawfully instituted its action in the courts of Colorado; in other words, its attempted institution of the suit when the laws of this state provide specifically that it shall have no right to prosecute any suit until the fees are paid, is the institution of no suit at all. This being the penalty provided, to recognize the validity of the suit to the extent of allowing it to stop the running of the statute of limitations, would be to relieve the plaintiff of the only penalty or prohibition which the legislature has seen fit to place upon it for its non-compliance with the laws of our state, to-wit, that it shall not be allowed to prosecute or defend until it has complied with the provisions of our statutes.

It is further urged by the plaintiff that the plea of limitation was not presented in apt time, and for that reason can not be considered. We cannot agree with this contention. This plea could not have been made at the time of the attempted institution of the original suit for the reason that the statute at that time had not yet run against the claims. The plea, however, was thereafter properly presented. The action against the defendants is for a penalty for the alleged violation of another statute upon their part, and under the ruling in the case of *The Atchison, Topeka & Santa Fe R. R. Co. v. Tanner*, 19 Colo. 559, the defendants were entitled to the benefit of the statute under a plea denying the plaintiff's cause of action which depended upon its being brought within one year

next after the offense was committed, it being covered by General Section 4068, Revised Statutes, 1908.

The judgment is affirmed.

*Affirmed.*

Mr. JUSTICE MUSSER and Mr. JUSTICE GABBERT concur.