### Carrie S. Friedman et al. v. Lewis Verchofsky et al.

1. BANKRUPTCY—*Section 70 (e) of the National Bankruptcy Law.*— Section 70 (e) of the national bankruptcy law gives the trustee power to pursue and recover property conveyed by the bankrupt to one not a *bona fide* holder, although the fraudulent conveyance may have been made more than four months prior to the filing of the petition.

2. SAME—*Purpose of Section 57 (e) of the National Bankruptcy Law.* —The sole purpose of section 57 (e) is to render null and void all conveyances of property made within four months prior to the filing of the petition, except as to purchasers not only in good faith, but for a present fair consideration.

3. SAME—*Section 11 (b) and (c).*—Section 11 (b) and (c) simply provide for the taking care of suits already begun prior to the adjudication, and is not a limitation upon the right of a trustee to appear in any suit, but rather provides the manner of procedure with reference to suits already begun and which may affect the estate of the bankrupt.

4. WORDS AND PHRASES—*Bona Fide Purchaser.*—A *bona fide* purchaser is one who pays a valuable consideration and takes the con-

veyance without notice of any equitable claim against the property conveyed.

**Creditor's Bill.**—Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge presiding. Heard in the Branch Appellate Court at the October term, 1901. Affirmed. Opinion filed January 16, 1903.

**Statement.**—This is a suit on a creditor's bill filed on the 14th day of July, 1899, by appellee, Lewis Verchofsky, against appellant, Carrie S. Friedman, and against her two daughters, Amelia E. Roseman and Hattie Kalish, and their husbands, and Jacob Hirsch, a brother-in-law of Mrs. Friedman. Lewis Verchofsky is Mrs. Friedman's uncle.

The bill alleges the recovery of a judgment on the first day of April, 1899, by the complainant against Mrs. Friedman for the sum of $1,750, the issuance of an execution and the sheriff's return of "no property found;" that in 1887 and 1888, Mrs. Friedman became the owner of three contiguous lots described in the bill; that complainant loaned her money for completing the buildings erected thereon; that on the 28th day of June, 1894, by a quit-claim deed, fraudulently and without any consideration, she conveyed said lots to said Jacob Hirsch; and that February 19, 1896, by warranty deed, said Hirsch and his wife conveyed the said property to the said two daughters of Mrs. Friedman without consideration, and for the sole purpose of hindering and delaying complainant in the collection of his claim; that Mrs. Friedman continued to be the real owner and her two daughters held title to said property for her use and benefit.

July 19th, five days after the filing of said creditor's bill, Mrs. Friedman filed a voluntary petition in bankruptcy, naming among others the complainant in this bill, also Edward Butcher and Walter Schumaker & Company as her creditors, and July 26, 1899, she was adjudged a bankrupt. She scheduled no assets. The complainant, also Edward Butcher, Walter Schumaker & Company and one Miller, filed their claims, and at a creditor's meeting elected George S. Dixon trustee in bankruptcy. Said Dixon was, on motion of some of the creditors, directed by the referee in bankruptcy to intervene as trustee in these

proceedings and to employ counsel.    Under the practice in
the referee's office, the creditor firm of Walter Schumaker
& Company caused Mrs. Friedman to appear and to sub-
mit to an examination under the provisions of the bank-
ruptcy act and there objected to her discharge, alleging the
same matters of fraud as are set up in the creditor's bill.
Many witnesses were called and testified on behalf of Mrs.
Friedman and the said creditors, and a transcript of their
evidence taken before the referee is by consent of parties
made a part of the record in this case.    After hearing the
evidence and after notice was given to all the creditors,
said objections were overruled and the said Mrs. Friedman
was granted her discharge.    The firm of Walter Schumaker
& Company filed their intervening petition in this suit
setting up a judgment obtained against Mrs. Friedman on
the 19th day of December, 1896, in the sum of $543, for
lumber sold and delivered to her for the improvement of
said premises in 1888, the issuance of an execution on the
8th day of January, 1897, and a return "*nulla bona,*" and
making substantially the same charges of fraud as made in
the creditor's bill.    Pursuant to the said order entered in
the insolvency proceedings in the United States District
Court, the said George S. Dixon, as trustee, also filed his
intervening petition in this suit and made substantially the
same allegations of fraud as are found in the creditor's bill
and prays that said deeds may be set aside, the property
sold, proceeds paid to him as trustee, and an order entered
authorizing him to take immediate possession of the prop-
erty and collect the rents thereof.    Answers were filed to
the bill and intervening petitions, alleging that the said
conveyances were *bona fide,* and denying allegations of
fraud.    Mrs. Friedman filed her cross-bill in this pro-
ceeding alleging the said insolvency proceedings in her
estate in the United States District Court and praying that
said proceedings be declared a sufficient bar to any further
proceedings in this court, and that the original bill and the
several intervening petitions be forthwith dismissed.    A
demurrer was filed to said cross-bill and sustained.    Upon
hearing, the Circuit Court entered substantially the follow-

ing decree, finding that the equities were with the complainant and said intervening petitioners; that the facts were substantially as set up in said bill and said intervening petition; that Mrs. Friedman now is and has been since she first acquired title, the real equitable owner of the said real estate and has been collecting the rents thereof; and that her daughters and said Hirsch had but a naked legal and nominal title to said real estate; that a receiver should be appointed to collect the rents thereof for the benefit of said trustee in bankruptcy, George S. Dixon; and that Mrs. Friedman should in equity pay over to the said receiver the rents of the real estate collected by her since the 26th day of July, 1899, the date on which she was declared a bankrupt; and it was therefore ordered and decreed by the court that said quit-claim deed, from Mrs. Friedman to said Hirsch, and the said warranty deed, from said Hirsch to the said daughters of Mrs. Friedman, " be and the same are hereby declared fraudulent and void as to the rights of the said trustee in bankruptcy;" and it was further ordered that William Raymond be appointed receiver, to collect the rents hereof, and after paying the costs of said receivership and the costs of the complainant and of the said intervening petitioners, hold the balance as such receiver for the sole benefit of said George S. Dixon, trustee as aforesaid. It was further ordered that the cause be referred to a master in chancery to take an accounting of rents collected by Mrs. Friedman, or by any parties to the suit, since the 26th day of July, 1899. It was further ordered that all parties to the suit forthwith surrender possession of the said real estate except that Mrs. Friedman might continue to occupy the flat now used by her in one of the buildings on said real estate until her rights under the homestead laws should be determined.

J. G. GROSSBERG and SAMUEL J. HOWE, attorneys for appellants.

McARDLE & McARDLE and ATWOOD & PEASE, attorneys for appellees.

MR. JUSTICE BURKE delivered the opinion of the court.

It is contended that the decree in this case should be reversed, because, first, the chief issue under the creditor's bill and the intervening petitions relates to the charge of fraud. It is alleged that the quit-claim deed from Mrs. Friedman to Mr. Hirsch, and the warranty deed from Mr. Hirsch and wife to the daughters of Mrs. Friedman were fraudulent as to creditors.

The chancellor who tried this case, heard the witnesses in open court. The evidence taken is voluminous and is sharply conflicting. The court having seen and heard the witnesses, was in a better position than we to judge of the truth of their statements and the weight that should be given to their testimony, and we will not reverse in such case except where it clearly appears that the evidence does not preponderate in favor of a decree. Fabrice v. Von der Brelie, 190 Ill. 460; Van Vleet v. DeWitt, 200 Ill. 153.

This case partakes of the bitterness of a family controversy. Most of the many witnesses called are related by blood or marriage. The hostility injected into this trial is phrased by counsel's description of parties when he states that on the one side are "the unprogressive, unwashed and unscrubbed," and on the other "the progressive, proud and cold," unable to restrain a genuine distaste for the former branch of the family. So intense became matters during the hearing that it is charged that witnesses in behalf of appellee, Verchofski, were told by the other side to leave the court and were given diamond rings to enforce the command; but the vigilance of complainant overcame the attempt to deprive him of witnesses and on the next day the tempted witnesses were in their places in court. The very aged, protesting a forgetfulness, and the young were called to the witness stand. The court appears to have taken an abundance of time to observe and study this family reunion or assemblage of parties and witnesses and their sharply conflicting testimony. With great care we have examined the record in this case and shall not extend this opinion with a detailed review of the evidence. Although appreci-

ating, in a case like this, the unsatisfactory result of making reference only to certain circumstances of the evidence, we nevertheless, to make it apparent that there was a sharp conflict, will notice briefly some controlling features in the evidence.

Whatever may have been the reason, Mrs. Friedman appears not to have been prompt in paying her debts.   She incurred the indebtedness to several of her creditors when she improved her property on or before the year 1890. Her property was worth, perhaps, not less than $15,000 and was incumbered for $7,500.   In June, 1894, she quit-claimed this property to Jacob Hirsch; her sister's husband, of Milwaukee, Wisconsin, for the consideration, as she alleges, of a cancellation of $5,000 of indebtedness held by Hirsch against her and the further consideration of $1,500 or $1,600 in cash.   Her husband was engaged in buying and shipping horses and just prior to the Columbian Exposition of 1893 was in the saloon business in Richland, Wisconsin. Mrs. Friedman says that her husband was unfortunate and she was compelled to assist him and thereby forced to borrow money.   However, as opposed to this statement Verchofski states that the business of Mrs. Friedman's husband was prosperous and that he sent her money.   Mr. Hirsch is represented as being in the years 1894, 1895 and 1896 a man of large affairs and of wealth.   To determine whether the conveyance from Mrs. Friedman to her brother-in-law was made in good faith, it is to be considered that he, the wealthy and obliging brother-in-law, should insist that his wife's sister convey this property for which she had labored so long and for the improvements of which she had not fully paid, and as one of Mrs. Friedman's witnesses testified, she went to Mrs. Friedman's house and found Hirsch there, " hollering for his money and she was crying and begging where she could get money."   In this connection it is to be remembered that Hirsch had such confidence in Mrs. Friedman that he left her in apparent possession of the property with full authority to manage the same and to collect rents therefrom.   When he took title thereto he did not procure

nor cause to be examined an abstract of title. He did not even insist upon or procure a deed from the husband of Mrs. Friedman. There is much in the record to which we will not refer, calling for a very careful weighing of the evidence to determine whether Mr. Hirsch was a *bona fide* purchaser of the property in question or whether he accepted title merely to accommodate his sister-in-law and to save her property from an attack of creditors. If the conclusion is reached that Mr. Hirsch was not a *bona fide* purchaser there was an abundance of evidence to justify the conclusion that the daughters of Mrs. Friedman were not *bona fide* purchasers and that they held the title for their mother. It is stated that the tenants of the property were so irresponsible and made such frequent removals that they were not required to sign a lease, yet one of the alleged owners moved away from the property and elsewhere rented premises, certainly not more desirable, and paid rent therefor.

There was a sharp conflict in the evidence as to whether Mrs. Friedman's daughters or their husbands had the amount of $6,000 said to have been paid by them for the premises. One of the daughters, Mrs. Kalish, testified: " I don't know whether my husband had other means outside of his salary. He didn't at the time I married him." Again the daughters received a warranty deed of the property from their wealthy relative, Mr. Hirsch. Soon after accepting such deed it was found that there were claims aggregating several hundreds of dollars which the mortgagee of the property insisted should be paid. These claims were paid by the daughters and they testified that they have never requested Mr. Hirsch under the covenants of his warranty deed to repay them said amounts. The daughters and their husbands testified that the alleged purchase price for the property of $6,000 was arrived at after a somewhat prolonged negotiation. It is a matter of comment that where the extreme amount was paid for the property that the purchasers would accept title without employing counsel to examine abstract of the same and

then fail to require Mr. Hirsch to pay any claims existing against the property, so abundantly able as he was to respond. An attempt was made to impeach one of the principal witnesses for appellee, but witnesses were called to sustain his general reputation for truth and veracity.

The record is replete with testimony and circumstances sharply in conflict. No good purpose can be served in further attempt to recall the evidence. Two distinct lines of irreconcilable testimony run through the entire record, and therefore we do not feel that we are called upon to pronounce one false and the other truthful, and in the premises we are not justified in disturbing the findings and the decree of the court.

Second. Counsel for appellants further claim that if the deeds were fraudulent as to creditors, still complainant and intervening petitioners are conclusively estopped from setting up such fraud in this proceeding upon the principle of *res adjudicata.*

Mrs. Friedman filed her petition in bankruptcy July 19, 1900, and specifications of objections were filed by one of her creditors, Shoemaker & Company, specifying substantially the same fraud as alleged in its intervening petition.

Mrs. Friedman was discharged upon a hearing of these objections, but long prior to her discharge the United States Court, when the proceedings in bankruptcy were pending, ordered the trustee, George S. Dixon, to appear, employ counsel and intervene as trustee in said creditors' bill proceedings, and pursuant to such order he filed his intervening petition therein and obtained a decree in his favor as aforesaid. The product of this litigation results to the benefit of the creditors of the estate which he represents, and unless there be good reason why the results of such litigation should not be retained for the benefit of the creditors, the court should not surrender it to parties who, through fraud, have become possessed of it.

It is true that Mrs. Friedman could not recover the property thus fraudulently conveyed by her, but it does not follow and is not the law, that the property may not

be recovered for the benefit of her creditors. The United States District Court ordered the receiver of her estate to intervene in these proceedings in the state court, not to recover property for her which should be retained from her estate, but solely to recover any and all property in which the creditors of her estate might or could have an interest. If the trustee has exceeded the powers conferred upon him by the United States District Court, or by its order discharging Mrs. Friedman, the United States Court has withdrawn power from the trustee to reap the fruits of the present litigation for the benefit of the creditors of her estate, she or her attorneys, if they desire to take these fruits away from her creditors, can appear in the United States Court and there represent that the trustee has exceeded his authority or has acted entirely without authority and ask the court to deal with him pursuant to the law.

We think that counsel misapprehend the scope of the trustee's power in this matter. The bankruptcy statute provides that the trustee shall be vested by operation of law with the title of the bankrupt to all property transferred by him in fraud of his creditors. It is abhorrent to reason to say that the trustee would have no more power and right in court than the bankrupt, to recover property fraudulently conveyed.

Counsel for appellants say that the bankruptcy act does not prevent suits by the trustee, but they say he must occupy no position antagonistic to the bankrupt for whose estate he is trustee. But it is to be said that he is a trustee, not for the bankrupt, but for the estate of the bankrupt, and in that estate the creditors have an interest and the spirit and whole trend of the present bankrupt act, is that the trustee shall conserve the entire estate of the bankrupt. With this thought and intent should the act and every section thereof be read and interpreted.

Section seventy (a) of the National Bankruptcy Law of 1898, reads as follows:

"The trustee of the estate of a bankrupt upon his appointment and qualification shall be vested by operation of law,

with the title of the bankrupt as of the date he was adjudged a bankrupt (except in so far as it is to property which is exempt) to all (1) documents relating to his property; (2) interests in patents, patent-rights, and trademarks; (3) powers which he might have exercised for his own benefit, but not those which he might have exercised for some other person; (4) *property transferred by him in fraud of his creditors;* (5) property which, prior to filing of petition, he could by any means have transferred or which might have been levied upon or sold upon judicial process against him; * * * (6) rights of action arising upon contracts or from the unlawful taking or detention of or injury to his property."

By this section of the statute the trustee is declared to be vested by operation of law with title to property transferred by Mrs. Friedman in fraud of her creditors. Her trustee was directed by the United States Court to intervene in these proceedings where the title to property conveyed by her was being litigated. By operation of law he was vested with title to all property transferred by Mrs. Friedman in fraud of her creditors. And it was his legal duty as trustee thus vested to intervene and assert his rights.

In this connection should be considered section 70 (e), which is as follows:

" The trustee may avoid any transfer by the bankrupt of his property, which any creditor of such bankrupt might have avoided, and may recover the property or its value from the person to whom transferred unless he was a *bona fide* holder for value."

This clause does not read that the trustee may avoid any fraudulent transfer made by the bankrupt within four months of the time of filing the petition in bankruptcy, but we think, gives the trustee power to pursue and recover property conveyed by the bankrupt to one not a *bona fide* holder, although the fraudulent conveyance may have been made more than four months prior to the filing of the petition. The sole purpose of section 57 (e) is to render null and void all conveyances of property made within four months prior to the filing of the petition, except as to purchasers " not only in good faith, but for a present fair

consideration." A *bona fide* purchaser is one who pays a valuable consideration and takes the conveyance without notice of any equitable claim against the property conveyed. But under the bankruptcy act, property conveyed within four months prior to filing the petition can not be retained by the purchaser, unless he is a purchaser, not only in good faith but for a present fair consideration.

It can not be seriously contended, that because Mrs. Friedman, the grantor, could not have recovered this property, that therefore her trustee, though vested with its title, could not bring suit and recover it.

Section eleven (b) and (c) of the bankruptcy act does provide that the trustee may prosecute or defend any suit begun by or against the bankrupt prior to adjudication, but that section simply provides for the taking care of suits already begun prior to the adjudication and is not a limitation, as contended by appellants' counsel, upon the right of a trustee to appear in any suit, but rather provides the manner of procedure with reference to suits already begun, and which may affect the estate of the bankrupt. We do not regard the section as an attempt to enumerate or specify the powers of the trustee with respect to his appearance in litigation. Any other construction would result, as counsel insist it should result, in preventing the trustee from doing anything which the law would prevent a fraudulent grantor from doing. Such a contention is not in harmony with the spirit or the letter of the bankruptcy act.

But it is further insisted that even though the trustee may follow and recover the property of the bankrupt fraudulently conveyed, yet if some creditor has filed specifications of objections to the discharge of the bankrupt and those objections have been overruled and the bankrupt discharged, that by operation of law he is then divested of his title.

Without doubt the discharge of Mrs. Friedman prevented a recovery thereafter against her personally and she is in no way interested in being heard nor can she object to any proceedings that may be taken subsequently to her

discharge affecting the property of her estate. The record of this case simply shows that the objections, filed by one of the receivers to her discharge, were overruled. Upon what specific grounds we do not know, for the report of the referee is not preserved in this record. It must have appeared to the referee, either that the objections were not sustained by proof or that the charges therein were not of such a nature or did not relate to such transactions as would prevent her individual discharge, and it may further have appeared to the referee that her discharge would not release the property in question, the title to which was before her discharge vested in the trustee of the estate. One proposition, however, is beyond dispute, and requires the citation of no authorities to sustain it—that the adjudication of her discharge can not be pleaded by her two daughters as an estoppel in the proceedings at bar. They were not parties in that proceeding and there was no specific adjudication that the conveyance by the bankrupt to Mr. Hirsch or by Mr. Hirsch to the two daughters was good. It was simply an adjudication that no matters were proved before the referee, sufficient to prevent the bankrupt's discharge. We do not take the view that Mrs. Friedman's daughters may plead the discharge of their mother as a conclusive defense for them in this action. If the United States Court had specifically held that either of said deeds was fraudulent, such holding could not be pleaded against them. Every one is entitled to his day in court. If this position were not tenable, the title of a present holder of real estate could be taken away from him by attacking the former title of one of the grantors whose name appeared in the chain of his title. The Supreme Court of this state has said in Phelps v. Curts, 80 Ill. 109, that where a debtor after a creditor's bill is filed against him is declared a bankrupt and as such sets up his discharge in that suit, the effect is to preclude the court from rendering a personal decree against him, but it can not preclude the court from dealing with the property alleged in the creditor's bill to have been fraudulently conveyed.

In view of the order of the United States Court direct-ing the trustee to intervene, and in view of the precise issue before the court in the matter of Mrs. Friedman's discharge, *i. e.*, was fraud of such character proved as to prevent her discharge, and in view of the considerations urged in this opinion, we hold that the order discharging the bankrupt will not bar proceedings under this creditor's bill. From what has been said it follows that the receiver had right to intervene in the case at bar even though it be held that so far as he is concerned it was an original proceeding. The question is not before us as to whether the bankrupt should personally be made a party to his proceeding, for the decree does not affect her as to any matters or things occurring at or prior to the time of her being adjudicated a bankrupt. The decree simply directs that she be allowed temporarily to remain in the property and that she turn over to the receiver appointed in the state court any rents that may be shown to have been collected by her sub-sequent to the adjudication of her bankruptcy. Considering the nature and scope of the allegations of the intervening petition of the trustee, and especially the fact of the investi-ture of the trustee with the title, we are of the opinion that the prayers are broad enough to warrant a decree for accounting of the rents as therein provided.

Aided by the industry of appellants' counsel we have considered all assignments of error and after a thorough inspection of the entire record we find no reversible error.

The decree of the Circuit Court is affirmed.